CITY OF FRESNO, a municipal corporation, Tranquillity Irrigation District, a public corporation, Petitioners,

v.

A. D. EDMONSTON as State Engineer of the State of California and Chief of the Division of Water Resources, Department of Public Works of the State of California, Harvey O. Banks and L. C. Jopson, as hearing officers for said A. D. Edmonston as State Engineer of the State of California and Chief of the Division of Water Resources, Department of Public Works of the State of California in the matter of Applications Nos. 23, 234, 1465, 5638, 5817, 5818, 5819, 5820, 5821, 5822, 9369 of the United States Bureau of Reclamation, Applications Nos. 6771, 6772, 7134 and 7135 of the City of Fresno, and Application No. 6733 of the Fresno Irrigation District, Respondents.

No. 685–ND.

United States District Court
S. D. California, N. D.
May 9, 1955.

Claude L. Rowe, Fresno, Cal., for petitioners.

Edmund G. Brown, Atty. Gen., and B. Abbott Goldberg, Deputy Atty. Gen., State of California, for respondents.

HALL, District Judge.

Rank et al. v. Krug et al. was originally filed in the Superior Court of the State of California, in and for the County of Fresno, on September 25, 1947. On October 7, 1947, the defendants who were designated as officials of the United States Bureau of Reclamation filed a petition for removal of said action to this court, pursuant to the provisions of 28 U.S.C.A. §§ 1441–1442, upon the grounds that this suit was an action of a civil nature arising under the laws of

the United States; that it was specifically directed to acts performed or to be performed by said defendants in their official capacity as agents of the United States; that the value of the matter in controversy exceeded $3,000, and that they were officials of the United States Bureau of Reclamation. The action was removed, and no motion to remand has ever been made.

The main action is a suit wherein named individuals, on behalf of themselves and all others within the class of those taking water directly from the river, or from wells alleged to be supplied in their underground replenishment by the San Joaquin river, which areas cover between 400,000 and 600,000 acres of land including a portion of the City of Fresno which takes its water for domestic purposes from wells, were named as plaintiffs. The defendants were designated officials of the Bureau of Reclamation, Irrigation Districts, and others. The State of California voluntarily intervened and appeared "in its sovereign, governmental, and proprietory capacities, etcetera." The United States, in the latter part of the proceedings, under the provisions of an Act passed July 10, 1952, 43 U.S.C.A. § 666, was joined and has since been a party to the proceedings although filing no answer or brief. The fifteen Irrigation Districts taking water from Friant dam and each of which are parties to the proceedings before the respondents in the instant matter, are also parties defendant. Several hearings were had on motions for preliminary injunction. The trial of the main action was commenced on January 29, 1952, and the evidence was concluded almost three years later on December 31, 1954. The trial was marked by interruptions, including two proceedings participated in by the defendant Irrigation Districts, the State of California, and the United States, had in the United States Circuit Court of Appeals, in unsuccessful efforts to obtain writs of prohibition to prevent the Trial Court from proceeding further. Nevertheless, approximately 250 days were consumed in the actual trial of the

case, upon which there has been accumulated almost 30,000 pages of transcript, hundreds of exhibits covering thousands of pages touching on and reporting in detail on scientific engineering data relating to geography, geology, topography, rainfall, and all matters that affect or concern surface and underground waters in the area. While the case has been long, it is well known that water rights litigation is usually protracted, involved, and bitterly contested.

As noted, the evidence was finished on December 31, 1954, at which time the Court indicated the matter would be submitted for decision upon the filing of briefs. The last brief received on the merits was that of the State, received on April 11, 1955. It was thus not until that time that this Court was in a position to give consideration to the many intricate, involved, and important issues of fact and law with which the main case was concerned. The hearings which were set to commence on April 5, 1955, were noticed on December 31, 1954, the last day of the taking of evidence in the main case. The hearings were thus set to commence before the final briefs were due and filed.

The foregoing statement is made, not only in order that some comprehension may be had of the enormity of the task of not only defining the issues in the main case, and deliberating upon and deciding them, but also to indicate that whatever is said in this Memorandum of Opinion is not to be taken as a final decision of this Court on any of the issues on the merits in the main case.

The problem to be resolved here is whether or not, in the exercise of its discretion, this Court should restrain the hearings heretofore commenced by the Division of Water Resources of the State of California until the further order of the Court, or until the case is finally decided.

The hearings before the defendant officials involve sixteen applications for the appropriation of water, filed under the Water Laws of the State of California.

Two applications, No. 234 and No. 1465, were filed by the Madera Irrigation District on January 19, 1916, and September 26, 1919, respectively. Seven were filed by Miller and Lux—No. 23 filed on March 27, 1915; No. 5817, No. 5818 and No. 5819 were filed February 2, 1928; No. 5820, No. 5821 and No. 5822 were filed February 3, 1928. Two were filed by the State of California—No. 5638 on July 30, 1927, and No. 9369 on August 2, 1938. All of the foregoing numbered applications were assigned and transferred to the United States of America in 1939. Four applications were filed by the City of Fresno—No. 6771 on August 20, 1930; No. 6772 on August 20, 1930, and Nos. 7134 and 7135 on December 5, 1951. The remaining application, No. 6773, was filed on July 30, 1930, by the Fresno Irrigation District.

Applications Nos. 6771 and 6772 of the City of Fresno had been pending for more than 25 years, as had also Application No. 6773 of the Fresno Irrigation District, and No. 234 of Madera for forty years.

Thus, except for Fresno Irrigation District, all the applicants in said numbered applications are parties to the main action.

■ Rank v. Krug is essentially and primarily a suit for the adjudication and determination of water rights. The res of the action is the water, regardless of whether the parties seek, or are entitled to, enforcement of their rights by decrees which act in personam. United States v. U. S. District Court, 9 Cir., 1953, 206 F.2d 303; State of California v. U. S. District Court, 9 Cir., 1954, 213 F.2d 818; Miller & Lux v. Rickey, C.C. 1906, 146 F. 574, affirmed, 9 Cir., 152 F. 11, affirmed 218 U.S. 258, 31 S.Ct. 11, 54 L.Ed. 1032; Rickey Land & Cattle Co. v. Wood, 9 Cir., 152 F. 22.

■ The first matter to be determined is whether or not this Court has the power to issue a writ. Section 1651 of Title 28, United States Code, is a reaffirmance of the power of the District Court to issue writs "necessary or appropriate in aid of their respective jurisdictions and agreeable to the usages and principles of law." The provisions of Section 2283 of Title 28, United States Code, are not a prohibition against, or a limitation upon, the power of this Court to issue writs under Section 1651 of Title 28, United States Code, if the writ is issued in aid of its jurisdiction, and if the injunction is agreeable to the usages and principles of law. Nor does Section 2283 apply to restraining and enjoining the conduct of administrative proceedings before State bodies or by State bodies. Mississippi R.R. Comm. v. Illinois Cent. R.R. Co., 1906, 203 U.S. 335, 27 S.Ct. 90, 51 L.Ed. 209.

While the question of jurisdiction was raised on motions to dismiss, which were denied by this Court—Rank v. Krug, 90 F.Supp. 773—various of the defendants, if not all of them, have, as permitted under the Federal Rules of Civil Procedure, 28 U.S.C.A., raised as a special defense, the lack of jurisdiction of this Court. It therefore becomes an issue on the merits to be decided by this Court in the main case whether or not it has any jurisdiction, and if it has jurisdiction on some or all phases, the nature and kind of relief which may be granted. And whatever may ultimately be the decisions of this Court on any of the issues in the main case, it is certain that it has jurisdiction to determine its jurisdiction. Land v. Dollar, 330 U.S. 731, at page 738, 67 S.Ct. 1009, 91 L.Ed. 1209; Montana-Dakota Utilities Co. v. Northwestern Public Service Co., 341 U.S. 246, at page 249, 71 S.Ct. 692, 95 L.Ed. 912; Hill v. Walker, 8 Cir., 1909, 167 F. 241. And certainly, whatever else was decided in the two prohibition cases against this Court—United States v. United States Dist. Court, 9 Cir., 206 F.2d 303, and 9 Cir., 213 F.2d 818—it is clear from them that this Court has jurisdiction to finally determine the main issues in Rank v. Krug on the merits.

■ Inasmuch as this Court has jurisdiction in the main action, it has jurisdiction to issue an injunction in an ancil-

lary proceeding to restrain interference with its jurisdiction, and to preserve the res of the action.

■ The within proceeding is clearly ancillary to the main action. Miller & Lux v. Rickey Land & Cattle Co., C.C., 146 F. 574, and Rickey Land & Cattle Co. v. Wood, 9 Cir., 152 F. 22, and 218 U.S. 258, 31 S.Ct. 11, 54 L.Ed. 1032.

In such an instance it is not necessary that great, immediate and irreparable injury, other than the threat of litigation, be shown to sustain the restraint of a hearing, especially when other factors are present showing an unwarranted interference with jurisdiction. The Supreme Court held in Rickey v. Miller & Lux, 218 U.S. 258, 262, 31 S.Ct. 11,[1] where there is concurrent jurisdiction, and the substantive issues were so far the same, the Court first seized with jurisdiction should proceed to determination of the questions without interference. Food, Tobacco, Agricultural and Allied Wkrs. v. Smiley, 3 Cir., 1947, 164 F.2d 922, is authority for the proposition that a proceeding before an administrative State agency involving matters within exclusive jurisdiction of a Federal agency amounts to irreparable injury and unwarranted interference with the powers of the Federal Agency. N.L.R.B. v. New York State Labor Relations Board, D.C.N.Y.1952, 106 F.Supp. 149, and Weiderhoff v. Neal, D.C.W.D.Mo. 1934, 6 F.Supp. 798, are authority for the same proposition, and for the proposition that a justiciable question as to conflict of jurisdiction arises when a State board threatens to hold hearings and to determine questions on the merits which are appropriately and properly lodged in another jurisdiction. In Board of Governors, etc. v. Transamerica Corp., 9 Cir., 1950, 184 F.2d 311, the Court, in granting an injunction, compared its powers under Section 1651 of Title 28, United States Code to that of a District Court which is confronted with a threat by litigation by third persons to interfere with its jurisdiction, and states in substance, that the broad powers of this section were granted with the intention that they would be adequate for all practical purposes sought to be served thereby. In Dwinell-Wright Company v. National Fruit Product Co., 1 Cir., 1942, 129 F.2d 848, 853, the Court enjoined a hearing by an administrative tribunal and stated:

"Clearly it is just as harassing and vexatious, and there is just as much waste and duplication of effort involved in twice trying the same issue between the same parties whether the second trial is before an administrative tribunal or before a court".

The general impression that proceedings before the Department of Public Works, Division of Water Resources, were judicial in nature and were entitled to be reviewed by the Courts, was not dissipated until February 15, 1955, when finally the Supreme Court case decided Temescal Water Co. v. Department of Public Works, 44 Cal.2d ——, 280 P.2d 1, and held that proceedings before the Division of Water Resources are administrative in nature.

■■ Furthermore, the State of California voluntarily came into the case by its Complaint in intervention, in its sovereign, governmental, and proprietory capacities. Thus, the State of California came into this case as a party, and by its broad and unlimited appearance in the case, included all of its agencies and departments, including the Department of Public Works, Division of Water Resources. Such appearance made the State a party to Rank v. Krug. Clark v. Barnard, 1883, 108 U.S. 436, 2 S.Ct. 878, 27 L.Ed. 780; People of Porto Rico v. Ramos, 1914, 232 U.S. 627, 34 S.Ct. 461, 58 L.Ed. 763; State of Missouri v.

---

1. The court also stated, 218 U.S. at page 263, 31 S.Ct. at page 13: "But in this case, if the judge below was of opinion as matter of fact on what appears that the institution of the petition was merely a device to dodge the jurisdiction of the Nevada court, and that the Rickey Land & Cattle Company was merely Rickey under another name, we could not say that his finding was wrong."

Fiske, 1933, 290 U.S. 18, 54 S.Ct. 18, 78 L.Ed. 145; Gunter v. Atlantic Coast Line Ry. Co., 1906, 200 U.S. 273, 26 S.Ct. 252, 50 L.Ed. 477; State of California v. U. S. District Court, 9 Cir., 1954, 213 F.2d 818. It sought affirmative relief, introduced evidence, and put on witnesses consuming many days and weeks of time, and hundreds of pages of exhibits of a technical and engineering nature. It being thus a party to the suit, it comes within the line of cases which permits a court to restrain a *party* to a suit from commencing proceedings which attempt to re-litigate the same or many of the same issues involved in the case to which it is already a party. Illustrative of such cases are: Rickey v. Miller & Lux, supra; Dwinell-Wright Co. v. National Fruit Product Co., supra; Havner v. Hegnes, 8 Cir., 1920, 269 F. 537; Western Fruit Growers v. United States, 9 Cir., 1941, 124 F.2d 381, where the court enjoined the prosecution of an action in a State court by parties, some of whom where not before the Federal court in another action.

Thus we have here the power in this court to issue a restraining order in aid of its jurisdiction, not only when one of the parties to the action is attempting to conduct a proceeding which involves issues before this Court for determination, but also on the basis that the power exists to protect the res from interference.

As stated by Judge Fee in In re Portland Electric Power Company, D.C.Or 1947, 97 F.Supp. 903, at page 914:

"The courts of chancery have been astute to protect property actually or potentially within custody from deterioration or interference by any one whether party or stranger. This power is inherent in the court which could not otherwise administer justice or protect litigants or the public."

In Havner v. Hegnes, 8 Cir., 1920, 269 F. 537, it was held, at page 542, that the predecessor of Section 2283 did not deprive the federal court of the power to enjoin parties litigant, or other persons from proceeding *by judicial proceedings or otherwise* to interfere with property of which the court had the actual or constructive possession, and even though the res be not taken.

Our own Court of Appeals, in the recent case of Board of Governors, etc. v. Transamerica Corp., 9 Cir., 1950, 184 F.2d 311, on the application of the Board of Governors of the Federal Reserve System, enjoined a bank charged with acquisition of stock in violation of the Clayton Act, 15 U.S.C.A. § 12 et seq., from a transfer of the stock which would tend to defeat the jurisdiction of the Board, whose orders the Court would have jurisdiction to enforce.

■ It is well at this point to call attention to the fact that the United States, the holder of all of the hereinbefore numbered applications, except those of the City of Fresno and Fresno Irrigation District, built Friant Dam, and in October, 1941, commenced impounding the water, and since 1944, has been impounding, and diverting practically all of the water under claim of right, either by ownership of the "fee title" of the water, or by virtue of the so-called "assignment, and exchange contracts" from Miller and Lux, or by virtue of the rights acquired under the above numbered applications now held by the United States, or by eminent domain. The State, throughout the main action, has taken various positions, the last of which, as nearly as I can presently ascertain, being that neither the plaintiffs nor the plaintiffs in intervention have any rights whatsoever to the use of water, whether riparian, appropriative, prescriptive, or under the said applications filed by the City of Fresno, and that the United States is, and since 1944 has been, lawfully impounding and diverting the water.

Thus, the court is not confronted with an administrative hearing by which a determination of claims in advance is sought as to the unimpounded waters in a flowing stream, as was the case in Pacific Livestock Co. v. Lewis (Oregon Water Board), 241 U.S. 440, 36 S.Ct. 637, 60

L.Ed. 1084, but we have a case where the *waters have been impounded under claim of right, in which the State concurs, and a determination after the fact is sought to be imposed on parties who have instituted judicial proceedings for a determination as to their rights.* It is no longer possible, as it was in the Pacific Live Stock case, to have the prior determination which the court said was necessary to a peaceful and profitable use by the parties and to avoid leaving them in uncertainty. Here a state of uncertainty has been previously created, and judicial powers have been invoked to put the matter at rest. The administrative proceeding here can no longer be merely preliminary for it seeks to operate upon an accomplished fact.

While the State Division of Water Resources appears to have counsel in the nature of "house" counsel, nevertheless at the hearing it was plainly evident that the respondents are controlled and dominated by the Attorney General's Office, and are bound by his opinions as a matter of law.

The opinions and arguments expressed by the State of California in the main case are widely at variance with the response filed to the petition, but the "house" counsel for the Division of Water Resources, nevertheless, said at the hearing, that they saw "eye to eye" with the Attorney General of the State of California.

If, as a matter of law, the Attorney General's office is correct in the contentions made on the main issues in Rank v. Krug, then plainly, on the matters pending before the respondents, according to the statement of the respondent of the issues pending before it (Ex. 503–A), the conduct of the hearing by the respondents is an interference with the jurisdiction of the Court to determine and decide the multitude of issues in Rank v. Krug, and just as plainly, is a calculated effort to so interfere.

The contention was made at the hearings on the order to show cause that the parties to the proceedings before respondents are not the same as the parties to the main action of Rank v. Krug, and that there were numerous protestants and other parties to such proceedings who were not before this Court which would deprive this Court of jurisdiction to enter a preliminary injunction.

An examination of Exhibit 503–A, introduced at the hearing on the order to show cause, lists a great many parties as parties protestant to the applications. An examination of the transcript of the hearing, however, discloses that actually the parties appearing at the proceedings before respondents were the parties to Rank v. Krug, with minor exceptions. From an examination of the evidence introduced on the order to show cause, it appears evident that the principal parties to the proceedings pending before the respondents are the United States, its Bureau of Reclamation, the State of California, the fifteen Irrigation Districts, who are defendants in the main action here, the City of Fresno and Tranquillity Irrigation District, and plaintiffs in the main case. That being so, the power lies in this Court, in view of its duty to protect its jurisdiction, to issue a restraining order which operates in its effect upon persons not actually parties to the main action in Rank v. Krug. Havner v. Hegnes, 8 Cir., 1920, 269 F. 537; Board of Governors, etc. v. Transamerica Corp., 9 Cir., 1950, 184 F.2d 311; Western Fruit Growers v. United States, 9 Cir., 124 F.2d 381; Venner v. Pennsylvania Steel Co. of New Jersey, D.C.N.J.1918, 250 F. 292.

In any event, it is the State of California, which is a party to the main case of Rank v. Krug, which is bringing on the proceedings and conducting them, and under the cases hereinbefore cited, this Court has power to restrain a party to a suit in aid of its jurisdiction and to protect from interference with the *res.*

It is contended in the response filed herein, and was contended by the State Attorney General on the argument, that the defendants are not attempting to exercise any judicial functions. It is true that the Supreme Court of California, on February 15, 1955, after the no-

tice by the State on December 31, 1954, fixing the date of the hearings for April 5th, 1955, decided in Tenescal Water Company v. Department of Public Works, 44 Cal.2d ——, 280 P.2d 1, that the Division of Water Resources of the Department of Public Works operates as an administrative agency. But it is evident that they are threatening to adjudicate and determine rights which are in issue in the main case.

It is impossible, in the short time since the briefs were in, to make an all-inclusive and detailed statement of the multitude of issues and questions of fact and law which have been raised by the pleadings and the evidence, and to determine which of those must be decided in the main case of Rank v. Krug. Issues of fact and law have been posed throughout the long trial, running the full gamut of all the claims of the parties, and evidence introduced therein, whether relating to claimed vested rights of the plaintiffs or claimed vested rights of the defendants, such as the right to construct works, impound, appropriate, and divert water before any permit is granted by the State on an application. The State and the United States have drawn into issue the question of rights acquired by the applications now standing in the name of the United States to impound, appropriate, and divert water at Friant, by taking the position in briefs and argument that such rights had vested in the United States by, among other things, the assignment of the State's filings to the United States, even if subsequent to other filings and regardless of the provisions of the Water Code giving priority to filings by municipalities for domestic uses, § 1460, Water Code of California. Furthermore, in the main action, the United States, the State of California, and the defendant Irrigation Districts introduced in evidence all of the applications now held by the United States, in support of their claim that the building of Friant Dam, the impounding of water, and its appropriation and diversion beginning in 1944 had vested rights thereto in the United States, which were and

are superior and paramount under the law to any claimed rights of any and all of the plaintiffs and of the plaintiffs in intervention. It is these very applications which the respondent in the hearings now seeks to pass upon. Without deciding the question, it gives weight to the contention of the petitioner here that the purpose and object and effect of the hearings is merely to give an appearance of validity to their position taken in the main case of Rank v. Krug. However, it is clear that the issues of whether or not rights exist which are prior, and which are superior in law to the rights of the defendants, are presented by the applications and are in issue in the main case, and it will be necessary for the Court to dispose of those claims in reaching a decision on the merits in Rank v. Krug.

That all, or substantially all, of the issues in the administrative proceedings are necessarily involved in the main action of Rank v. Krug becomes apparent from even a cursory examination of Exhibit 503–A introduced in the hearing on the order to show cause, which is a statement of the Division's Hearing Examiner of the issues to be decided in the administrative proceeding. It is unnecessary at this point to set forth in full all of the issues stated in Exhibit 503, and confirmed by the Hearing Examiner at the hearing, which are or may be present on the hearing of the applications by the respondents. I will simply point to a few of them as stated in Exhibit 503–A:

"All claims or interests of the United States in and to Applications 5638 and 9369 are as a trustee; the State is the trustor or grantor; the landowners within the canals service area are the beneficiaries of said trust; all claims or interests of the applicant to the remaining applications and to the water of San Joaquin River under various exchange contracts must likewise be considered as having been acquired by applicant under said trust.

"The applications have been dormant for many years with little dili-

gence to perfect, and approval at this time with their relative priorities is 'a direct threat at the very foundation of thousands of water rights which have been instituted and perfected in good faith.'

"The rights sought are to be held in the name of the United States whereas the basic requirement of beneficial use is to be accomplished by the landowners.

"The applications do not conform to the Water Code of the State and rules and regulations of the Department of Public Works.

"The substitution of foreign and stored waters for natural flow would adversely affect existing rights.

"The proposed underground storage with accompanying fluctuation of the water table under private land will be detrimental to agriculture, and the proposed diversions, if granted, will constitute an infringement upon their vested property rights and interest.

"The protestants are advised of no program by applicant for protection of their vested rights.

"The proposed diversions and the related program of the Central Valley Project may cause material damage and injury to the levees and other reclamation works by the possible fluctuations in the water levels in the Delta area.

"No surplus water exists for appropriation under these applications. Present water right owners along the San Joaquin River system will require the entire flow for irrigation and development of their lands, replenishment of ground water, and to prevent salt-water intrusion.

"The project as contemplated thereunder will irreparably affect the ground water supply insofar as it is derived from percolating water from San Joaquin River.

"The project is contrary to the Water Code and Constitution of the State as it will deprive the counties of origin and adjacent areas of water necessary for development.

"There is not sufficient water available over and above prior and existing rights in the watershed.

"Applicant has not obtained and has no right to store water beneath the surface of lands under private ownership.

"The applications are for the Central Valley Project. The initial features of the project have been constructed as first authorized by the State of California as a State project and in the construction or operation of the project the applicant requires the rights which the State would have required had the project been constructed and operated by the latter.

"The project has been diligently undertaken and has been of sufficient public notice to afford wide publicity. Therefore, the protestants have been upon notice that any application junior in time to those under consideration must necessarily result in permits junior to those of the applicant.

"The principal issue which must be decided by the Division of Water Resources is whether at the time the applications were filed there was unappropriated water tributary to the points of diversion specified in the applications.

"The applicant, in furnishing water from Friant Dam, has complied with State law in protecting the areas of origin of water supply and to the applicant's knowledge no owner of land within the area of origin of San Joaquin River has been deprived or will be deprived of a water supply.

" 'Highly trained and competent employees of the applicant have made intensive studies and investigations concerning the effect of the San Joaquin River on subsurface water. These investigations have disclosed no evidence to support City

of Fresno's claim that the ground water in the vicinity of its wells is replenished by water from the San Joaquin River.'

"The existence of unappropriated water available to supply applicants, as to amounts and periods of occurrence.

"Injury, if any, to downstream users that will result from the proposed appropriations, including, among other matters, salt-water intrusion and other water quality considerations.

"The extent to which the proposed appropriations are in accordance with or contrary to the public interest, including but not limited to, special permit conditions responsive to Legislative recommendations.

"The additional protection, if any, required for prior right holders and areas of origin through special permit clauses.

"Data from City of Fresno and Fresno Irrigation District with respect to:

"(a) Present and future water requirements,

"(b) Extent of present and future service areas,

"(c) Safe yield of present sources of supply,

"(d) Anticipated sources of supply for future requirements and plans for development thereof, including relationship to applications pending before the Division.

"Need of the United States for permits under all of its pending applications being heard.

"Nature and extent of rights to the use of San Joaquin River water acquired and held by the United States other than under its pending applications.

"Ability of City of Fresno and Fresno Irrigation District to acquire right to impound water and divert from Millerton Lake should the ap-

plications of those entities be approved.

"Past efforts of applicants to consummate the appropriations initiated by the applications being heard.

"Effect upon other water users of the proposed changes in point of diversion and place of use under Application 23, License 1986.

"Contracts entered into between the United States and other agencies which provide for water supply and for delivery of San Joaquin River water.

"Rights to water of San Joaquin River not of record with the Division of Water Resources.

"Recharge to ground water from flow in San Joaquin River downstream from Friant Dam.

"Details of the proposed underground storage project under Application 9369 as follows:

"(a) Locations, boundaries, areas and capacities of underground basins.

"(b) Locations of recharge areas, areas of recovery, and methods and points of measurements of water stored underground and recovered.

"(c) Places of use of water so recovered.

"Legal authority and right of City of Fresno and Fresno Irrigation District to maintain applications with the State to appropriate water from a project which has been constructed by the United States.

"Right of City of Fresno to serve water for irrigation purposes outside of the boundaries of the City.

"Relative priority of subsequent applications filed by municipalities and those filed pursuant to Part 2, Division 6 of the Water Code [Chapter 286, Statutes 1927]."

All of the foregoing matters are touched upon by the evidence and the arguments in the main case. The greatest amount of time taken in the presentation of evidence in the main case involved

what the respondents have designated as an issue, *viz.:* "Recharge to ground water from flow in San Joaquin river downstream from Friant Dam." Before a determination can be made, whether there are or are not any waters in the San Joaquin River available for appropriation, a determination must be made as to the extent and amount of the vested rights to the use of water flowing in the San Joaquin River between Friant and Mendota. These are judicial questions as are also the questions as to whether any rights to build works, impound and appropriate waters vested under any of the applications prior to any hearing or the granting of any permit by the State. Merritt v. City of Los Angeles, 1912, 162 Cal. 47, 120 P. 1064; Yuba River Power Company v. Nevada Irrigation District, 1929, 207 Cal. 521, 279 P. 128; Inyo Consolidated Water Co. v. Jess, 1911, 161 Cal. 516, 119 P. 934.

Clearly, from a mere statement of the above "issues" it is evident that the respondents threaten to decide them regardless of whether or not they have that power. And just as clearly, the judicial decision upon many, if not all, of the issues must be made by this Court. Furthermore, this Court must determine whether or not the rights to water put at issue in the main case should be determined before any hearings under the Water Code are had. That is a question before this Court on the merits. Apparently there appeared to have been some doubt on the part of the State in this respect; otherwise, no explanation can be given for the delay of forty years in one instance and twenty-five years in another in bringing the applications on for hearing. This is supported by a letter in Exhibit 501, which letter is dated March 3, 1948, from the Department of Public Works to the Commissioner of Finance, City of Fresno, wherein the City of Fresno is advised that its application had been held in suspended status for some time pending the development of the Central Valley Project, and by a letter of March 25, 1952, from the same agency to the City of Fresno, wherein

it is stated: "*If* in due course *a hearing is found necessary,* you will be advised sufficiently in advance of the time and place to arrange for a representation."

The doctrine of exhaustion of administrative remedies is urged as a defense to this ancillary proceeding. That is properly a part of the main case, and what the State really is attempting to do is question, at this time, the jurisdiction of the Court in the main case. This also applies as to the contention that there is a plain, speedy, and adequate remedy at law. Those and many others raised in respondents' answer are contentions not germane to this proceeding but only germane in the main case involving the determination of the relative rights, if any, of the parties in the waters of the San Joaquin River. Such matters have been extensively briefed by the parties in the main case, which it is not the function of the Court at this time to decide.

There is authority to the effect that a party is not required to wait indefinitely for a hearing or decision by an administrative body before entitling them to claim equitable relief in a court. In Smith v. Illinois Bell Telephone Co., 1926, 270 U.S. 587, 46 S.Ct. 408, 70 L.Ed. 747, the Supreme Court held that two years was an unreasonable delay. Here, as pointed out, delays are as long as forty years.

Balancing the conveniences of the parties, and taking into consideration the fact that the plaintiffs and the plaintiffs in intervention in Rank v. Krug expended in the neighborhood of $60,000 in the presentation of evidence in the main case, and the fact that all of the briefs are now in on the main case, and it is finally in a posture for decision by the Court at its earliest convenience; and taking into consideration the delay of twenty-five years by the State in bringing on for hearing the applications of the City of Fresno, and the delay of forty years in bringing the application on now owned by the Government, but filed by the Madera Irrigation District, it must

be said that no harm can come as a result of a delay in the proceedings, pending the conclusion of the main case of Rank v. Krug.

In this connection, it should be noted that at the outset of the trial of the main case, the Court suggested to all of the counsel for the parties that the matter be referred to the Department of Public Works, Division of Water Resources of the State of California, as a special master under the provisions of Section 2075 of the Water Code of the State of California, but that all parties, including the State, objected to that procedure. What is occurring now, by the respondents proceeding with the hearing, is that the State is thus attempting to assume the powers which it would have had if the reference had been made.

It should be noted here again that the notice of hearing was seven years after the main case was filed, and on the final day of the trial, in which the State participated. In doing so, it produced as its principal witnesses employees of the Division of Water Resources, and in support of the contention, among others, of the State that the plaintiffs and plaintiffs in intervention had no rights, they relied on, and introduced in evidence, many of the documents listed in Exhibit 503-A (beginning page 34) as things which "Will be officially noted or offered in evidence at the hearing." Coming at this time, the holding of the hearings is plainly an attempt to, and is an interference with, the jurisdiction of the Court in the main case.

It may well be that upon a decision on the merits, this Court will conclude that the hearings should proceed. It is impossible to forecast at this date what the Court's decision will be on the many jurisdictional and other questions raised in the main case, or the form any decree might take. From the time I have had to examine the briefs which are submitted by the parties on the merits in the main case, it is possible that the Court, upon examination of those briefs and a study of the case, will desire further briefing on some points.

It is concluded that a preliminary injunction should issue in the aid of the jurisdiction of this Court, to preserve the status quo, to protect the res, and to give this Court sufficient time for it to deliberate and make an unhurried decision on the many important questions in the main case.

The petitioners accordingly will, within a reasonable time, prepare proposed findings of fact and conclusions of law, and an order, and serve the same under the Rules.