**STATE OF OREGON, Plaintiff,**

v.

**CITY OF RAJNEESHPURAM, a putative Oregon municipal corporation; Wasco County, a political subdivision of the State of Oregon; Robert M. Brown, Sheriff of Wasco County; Rajneesh Foundation International, a New Jersey corporation; Rajneesh Investment Corporation, an Oregon corporation; Rajneesh Neo-Sannyas International Commune, an Oregon corporation; Ma Anand Sheela, individually; Swami Prem Jayananda, Ma Yoga Vidya, Swami Krishna Deva, Ma Prem Archan, Swami Deva Sandesh, Ma Prem Patipada, Ma Deva Jayamala, Ma Sat Prabodhi, Ma Prem Rikta, individually and as representatives of the class of all current residents of the City of Rajneeshpuram, Defendants.**

Civ. No. 84–359 FR.

United States District Court, D. Oregon.

Nov. 16, 1984.

Dave Frohnmayer, Atty. Gen., William F. Gary, Deputy Atty. Gen., John A. Reuling, Jr., Sp. Counsel, Robert W. Muir, Margaret Rabin, Asst. Attys. Gen., Salem, Or., for plaintiff.

Wilford K. Carey, Hood River, Or., for Wasco County.

Ma Prem Sangeet, Rajneesh Legal Services Corp., Swami Prem Niren, Swami Prartho Subhan, Rajneeshpuram, Or., Robert D. Durham, Portland, Or., for defendants.

## OPINION AND ORDER

FRYE, Judge:

The matter before the court is plaintiff State of Oregon's motion for summary order challenging the jurisdiction of this court to grant injunctive relief against the State of Oregon. The State of Oregon's motion involves (1) the nature and extent of a state's immunity from suit in federal court under the eleventh amendment to the United States Constitution, and (2) what constitutes a waiver of that immunity.

Plaintiff State of Oregon brought this declaratory judgment action against defendants in state court, seeking a declaration that the incorporation, existence, and operation of the City of Rajneeshpuram is unconstitutional under the Establishment of Religion Clause of the first amendment to the United States Constitution. Defendants [1] removed the action to this court, and the State of Oregon then filed a motion to remand the action back to state court. After extensive briefing, this court concluded that the State of Oregon's complaint stated a claim arising under federal law for jurisdictional purposes, that the two defendants that did not consent to removal should be realigned as plaintiffs for jurisdictional purposes, and hence that the action was properly removable. The court rejected the State of Oregon's argument that the eleventh amendment precluded removal; however, the court noted that the eleventh amendment might affect the nature and type of relief the court could grant against the State of Oregon.

1. All references to "defendants" in this opinion exclude Wasco County and its sheriff.

This court is aware of the limitations the eleventh amendment places on the types of relief a federal court may award against a state, and it may be that certain forms of ancillary relief the defendants might request if they prevail would not be within this court's power to award.

*State of Oregon v. City of Rajneeshpuram,* Civ. No. 83-1892FR (D.Ore. March 23, 1984), Opinion and Order at 11.

Defendants have now filed a motion for a preliminary injunction, asking the court to enjoin the State of Oregon from treating the City of Rajneeshpuram and its employees and officials differently from other legally incorporated cities. Prior to the hearing on the preliminary injunction motion, the State of Oregon argued that the eleventh amendment precludes this court from granting the requested injunctive relief against the State of Oregon itself, and requested that the court decide the eleventh amendment issue prior to holding the preliminary injunction hearing. In light of the serious nature of the eleventh amendment question, the court granted the State of Oregon's request.

The eleventh amendment reads:

> The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State.

Courts have extended the immunity to cover suits by citizens of a state against their own state. *Hans v. Louisiana,* 134 U.S. 1, 10 S.Ct. 504, 33 L.Ed. 842 (1890). Clearly the eleventh amendment bars defendants from proceeding against the State of Oregon unless an exception to the eleventh amendment exists or unless the State of Oregon has waived its eleventh amendment immunity. A state may waive its eleventh amendment immunity, for example, by participating in a federal program, *Parden v. Terminal Railway,* 377 U.S. 184, 84 S.Ct. 1207, 12 L.Ed.2d 233 (1964), or by filing or intervening in an action in federal court. *See, e.g., Clark v. Barnard,* 108 U.S. 436, 2 S.Ct. 878, 27 L.Ed. 780 (1883), *State of Iowa v. Union Asphalt and Roadoils, Inc.,* 409 F.2d 1239 (8th Cir.1969), *City of Fresno v. Edmonston,* 131 F.Supp. 421 (N.D. Cal.1955). Defendants argue that an exception to or waiver of the eleventh amendment applies in the present case.

Defendants rely on three rules of law. First, when a state brings an action in federal court it waives its eleventh amendment immunity with respect to all counterclaims arising out of the same transaction or occurrence dealt with by the complaint, at least to the extent that the counterclaims do not exceed the amounts sought by the state's claim. *See, e.g., Georgia Department of Human Resources v. Bell,* 528 F.Supp. 17 (N.D.Ga. 1981). Second, federal courts have the power to take all appropriate measures to protect their removal jurisdiction, including enjoining parties before them from proceeding in state and administrative tribunals involving the subject matter before the federal court. *See, e.g., Myers v. Hertz Penske Truck Leasing, Inc.,* 572 F.Supp. 500 (N.D.Ga.1983), *City of Fresno, supra.* Third, where a state voluntarily brings an action in federal court, rule two applies to the state just as it does to any other party, because the state has waived its eleventh amendment immunity by bringing suit in federal court. *City of Fresno, supra.*

Defendants argue that, applying these rules, the State of Oregon has waived its immunity from suit in this case, notwithstanding the fact that it did not voluntarily bring this action in federal court and strongly objected to this court's jurisdiction when defendants removed the case to the federal court. Essentially, defendants argue that when a state brings in a state court an action arising under federal law, the state has waived its eleventh amendment immunity as to all counterclaims arising out of the same transaction or occurrence as the state's claim in the event the case is removed to federal court. The waiver of eleventh amendment immunity in such a case is not explicit, but rather im-

plied. When the State of Oregon chose to base its action on federal law, it must have known that the action would be removable, and hence must also have waived its eleventh amendment immunity as if it originally had brought the action in federal court.

Defendants cite two cases in support of this argument. In *Port Royal & Augusta Railway Co. v. South Carolina,* 60 F. 552 (C.C.D.S.C.1894), the railroad removed an action brought against it by the State of South Carolina to federal court. A single circuit judge (as opposed to a panel or the court sitting *en banc*) held that the State of South Carolina had waived its eleventh amendment immunity with respect to a "cross-bill" filed by the railroad against the State of South Carolina after removal. In *Commonwealth of Puerto Rico v. Sea-Land Service, Inc.,* 349 F.Supp. 964 (D.P. R.1970), the Commonwealth of Puerto Rico brought an action arising under federal law against the defendant in a state court, seeking the payment of certain warehousing fees by the defendant. After removal, the defendant answered and contended that the Commonwealth of Puerto Rico was liable to pay the fees. The court held that the Commonwealth of Puerto Rico had waived its eleventh amendment immunity by bringing the action in state court:

> Once the Commonwealth decides to voluntarily become a party to a suit involving its interests by way of the attorney general, as in the case at bar, it waives its sovereign immunity, which consent and waiver cannot afterwards be withdrawn. *Porto Rico v. Ramos,* 232 U.S. 627 [34 S.Ct. 461, 58 L.Ed. 763] (1914). Once the veil of sovereign immunity is voluntarily lifted by the Commonwealth itself, it stands in the shoes of an ordinary citizen and the cause of action can be removed to the federal court if there are grounds for removal.

*Id.* at 977.

■ Although the cases above are factually on point, they do not constitute substantial authority because both ignored a fundamental rule that has developed in eleventh amendment cases: A state does not waive its eleventh amendment immunity from suit in federal courts by consenting to be sued in its own courts. *See Great Northern Life Insurance Co. v. Read,* 322 U.S. 47, 64 S.Ct. 873, 88 L.Ed. 1121 (1944). *Read* involves a statute which allowed the citizens of the State of Oklahoma to sue the state's insurance commissioner for money wrongly collected as taxes. The court held that the State of Oklahoma's consent to be sued in its own courts did not create a waiver of its eleventh amendment immunity from suit in federal court:

> The immunity may, of course, be waived. [Citation omitted]. When a state authorizes a suit against itself to do justice to taxpayers who deem themselves injured by any exaction, it is not consonant with our dual system for the Federal courts to be astute to read the consent to embrace Federal as well as state courts.

*Id.* at 54, 64 S.Ct. at 877.[2]

The present case is factually different from cases such as *Read* in that the present case involves a consent implied from the filing of an action rather than from a general statutory consent to suit. However, in light of the Supreme Court's recent decision in *Pennhurst State School & Hospital v. Halderman,* —— U.S. ——, 104 S.Ct. 900, 79 L.Ed.2d 67 (1984), this factual distinction is not crucial. In *Pennhurst,* the Court engaged in a comprehensive discussion of the origin, nature, and development of eleventh amendment immunity, and stated:

> A sovereign's immunity may be waived, and the Court consistently has held that a State may consent to suit against it in federal court. We have insisted, however, that the State's consent must be unequivocally ex-

2. The *Ramos* case, cited in the *Sea-Land* decision in support of the result, involves an action wherein the Commonwealth of Puerto Rico voluntarily intervened in an action *in federal court.* The Supreme Court held in *Ramos* that the Commonwealth of Puerto Rico's consent to be made a defendant in an action in federal court was a waiver of its right to later assert eleventh amendment immunity.

pressed.... Our reluctance to infer that a State's immunity from suit in the federal courts has been negated stems from recognition of the vital role of the doctrine of sovereign immunity in the federal system. A State's constitutional interest in immunity encompasses not merely *whether* it may be sued, but *where* it may be sued.

*Id.* 104 S.Ct. at 907 (citations, footnote omitted; emphasis in original).

For this court to adopt defendants' argument would require the court to ignore the *Pennhurst* language as well as the established principle that the eleventh amendment involves not only *whether* a state may be sued, but also *where* it may be sued. Although the language quoted above is dicta, it reflects a concern on the part of the Supreme Court that the eleventh amendment be more strictly applied by lower federal courts. Here, defendants ask this court to hold that the State of Oregon consented to be sued and enjoined in federal court by bringing an action based on a federal cause of action in state court. Such a waiver would have to be implied, and implied very tenuously at that. This court would have to find consent because (1) the state brought an action arising under federal law, (2) which the state knew would be removable to federal court. However, the history of this litigation reveals that (1) the state did not believe that its complaint arose under federal law for jurisdictional purposes, and at all times has contested this court's assertion of subject matter jurisdiction, and (2) the state has done everything in its power to preclude removal of this action to federal court. In such circumstances, the kind of unequivocal expression of waiver of immunity required by the cases is absent; a finding by this court that the state consented to be sued in federal court by these defendants would be a fiction.

Defendants also argue that the removal statutes themselves constitute an abrogation by Congress of the State of Oregon's eleventh amendment immunity, without regard to whether the state waived its immunity or consented to suit. An analogous case is *County of Monroe v. State of Florida*, 678 F.2d 1124 (2d Cir.1982), *cert. denied* 459 U.S. 1104, 103 S.Ct. 726, 74 L.Ed.2d 951 which involves the Federal Extradition Act, 18 U.S.C. §§ 3181 *et seq.* This Act authorizes the executive authority of a state to make a demand upon another state for the return of a fugitive, and places upon the second state a duty to apprehend and deliver the fugitive to the demanding state. Section 3195 provides that all costs or expenses incurred by the second state in apprehending the fugitive shall be paid by the demanding authority. The court in *Monroe* held that when a demanding state makes use of the Act, it is subject to suit in federal court in the event it refuses to pay the costs incurred by the apprehending authorities. The court, citing *Parden, supra,* first noted that Congress may abrogate eleventh amendment immunity in its exercise of powers delegated to it under the United States Constitution. Article IV, section 2 of the United States Constitution specifically refers to extradition matters, and has been interpreted as giving Congress full power to deal with such matters. The Federal Extradition Act was enacted pursuant to this constitutional grant of power to Congress. Although the Act contains no express abrogation of eleventh amendment immunity (because the Act was originally enacted before the eleventh amendment was adopted), the court found that such abrogation should be implied from the Act. It arrived at this conclusion for a number of reasons. First, the Act specifically makes a demanding state liable for costs incurred in apprehending a fugitive, and were eleventh amendment immunity not abrogated, the apprehending state would be left without a remedy. Second, the demanding state knew that it would be liable for costs when it invoked that Act—a liability imposed expressly by a federal law—and hence the demanding state impliedly consented to suit in federal court by invoking the Act:

The instant case involves a federal statute that does not come into play until affirmatively invoked by the demanding

state and that may be invoked on a limited, *ad hoc* basis as the need arises.

. . . . .

In § 3195 Congress explicitly conditioned the right of a state to demand extradition upon the demanding state's willingness to pay the costs of that extradition.... By demanding extradition, [the demanding state] indicated its willingness to accept Congress' condition: pay the costs of extradition or consent to suits brought to enforce that obligation.

678 F.2d at 1134. The court also noted that the impact of the abrogation of the eleventh amendment on the demanding state's treasury was small, and that the strong federal interest in seeing that demanding states live up to their obligations under the Act strongly outweighed the minimal invasion of their sovereignty.

To make an analogous argument, defendants here must argue that Congress intended to abrogate the State of Oregon's eleventh amendment immunity when it enacted the removal statutes. However, undertaking the same sort of analysis as in *Monroe*, this argument must fail. First, unlike *Monroe*, the present case does not involve a federal statute that does not come into play until affirmatively invoked by the state. Rather, the removal statutes must be invoked by the defendants. Second, unlike the federal statute in *Monroe*, there is no express liability imposed upon the State of Oregon by the removal statutes themselves, as the removal statutes do not grant substantive legal rights. Third, *Monroe* involves a situation where the result of abrogating eleventh amendment immunity was slight (in that case the imposition of a $15,588.99 judgment upon the demanding state) and avoidable on a case-by-case basis. Here, however, the consequences of finding an abrogation of eleventh amendment immunity are severe: a federal court might impose upon the State of Oregon its direction as to how the state must treat one of the state's own municipalities under state law. And this consequence could only be avoided under the defendants' theory if the State of Oregon chose to give up its right to rely on the United States Constitution in bringing this suit. This is not the "minimal invasion of sovereignty" involved in *Monroe*. Finally, the federal interest involved in the present case that the determination of questions of federal law should be done by federal courts is insufficient to override the State of Oregon's eleventh amendment immunity. Were this not so, the eleventh amendment would be rendered meaningless, for in every case involving a federal question, the eleventh amendment would be abrogated.

To conclude, there is no basis for finding that Congress intended to abrogate eleventh amendment immunity when it enacted the removal statutes.

■ Defendants protest that this decision will preclude this court from granting full relief among all parties. This is true, but irrelevant. As the Court in *Pennhurst* stated:

It may be that applying the Eleventh Amendment ... results in federal claims being brought in state court, or in bifurcation of claims. That is not uncommon in this area....

In any case, the answer to [plaintiffs'] assertions is that such considerations of policy cannot override the constitutional limitation on the authority of the federal judiciary to adjudicate suits against a State.... That a litigant's choice of forum is reduced "has long been understood to be part of the tension inherent in our system of federalism."

*Id.* 104 S.Ct. at 919–20 (citations, footnotes omitted).

■ IT IS ORDERED that plaintiff's motion for summary order is therefore GRANTED, and this court finds that the eleventh amendment precludes any granting of injunctive relief against the State of Oregon in this case.[3]

3. Defendants have not yet answered the State of Oregon's complaint. The State of Oregon is the sole party aligned against defendants. Injunctive relief may be granted by a federal court

against state *officials* if those *officials* are violating federal law. *Ex parte Young,* 209 U.S. 123, 28 S.Ct. 441, 52 L.Ed. 714 (1908). The State of Oregon contends that even if state officials could be named as party plaintiffs, *Pennhurst* holds that the eleventh amendment precludes federal courts from granting injunctive relief against state officials to force state officials to conform their conduct to *state* law. Plaintiff argues that defendants' requested injunctive relief would require the court to do precisely that. Since the State of Oregon is the only plaintiff, the court need not address this issue.