# MISSISSIPPI RAILROAD COMMISSION *v.* ILLINOIS CENTRAL RAILROAD COMPANY.

## APPEAL FROM THE CIRCUIT COURT OF APPEALS FOR THE FIFTH CIRCUIT.

No. 64. Argued October 26, 1906.—Decided December 3, 1906.

Where complainant not only sets up diverse citizenship but also a constitutional question he has the right to appeal from the judgment of the Circuit Court to the Circuit Court of Appeals, and from its decision an appeal or writ of error may be taken to this court. *Field* v. *Barber Asphalt Co.*, 194 U. S. 618, distinguished.

A commission created by the law of a State for the purpose of supervising and controlling the acts of railroad companies operating within the State is subject to suit, and a suit brought by a company of another State in the

Circuit Court of the United States against the members of the commission is not a suit against the State within the prohibitions of the Eleventh Amendment.

The Railroad Commission of Mississippi is not, as has been determined by the highest court of that State, a court, but a mere administrative agency of the State, and the prohibitions of § 720, Rev. Stat., against injunctions from United States courts to stay proceedings in state courts are not applicable thereto; and even though the Commission might, under the state law, resort to the state courts to aid it in enforcing its orders the proceeding cannot be regarded as one in the state courts within the meaning of § 720, Rev. Stat. While a state railroad commission may, in the absence of congressional legislation, order a railroad company to stop interstate trains at stations where there is only an incidental interference with interstate commerce, based on a legal exercise of the police power of the State exerted to secure proper facilities for the citizens of the State, where the railroad company has—as in this case—furnished all proper and reasonable facilities, such an order is an improper and illegal interference with interstate commerce and void as a violation of the commerce clause of the Constitution.

138 Fed. Rep. 327, affirmed.

THE railroad commission of the State of Mississippi, and its members and clerk, as appellants, bring to this court by appeal the judgment of the Circuit Court of Appeals for the Fifth Circuit, which court reversed the judgment of the United States Circuit Court for the Southern District of Mississippi in favor of the appellants, and remanded the case, with directions to enter a decree for the complainant, the railroad company.

The case, as it appears in the record, shows the following facts:

The citizens of the town of Magnolia, which has about 1,200 inhabitants, and is situated in the State of Mississippi, on the line of the railroad of the defendant in error, and about ninety-eight miles north of New Orleans, in April, 1903, presented a petition to the Mississippi Railroad Commission, asking that commission to order the railroad company to stop its passenger trains numbers one, three and four at the Magnolia station, the ground of the request being, as stated in the petition, that Magnolia was one of the most progressive towns in the State and the county seat of the county, and the petitioners believed

that they were entitled to have these trains make regular stops at that point, and they stated their belief that it was for the best interest of the public, as well as the town, to have the passenger trains named make regular stops at the town.

Trains numbers one and three were south bound trains from Chicago, passing Magnolia on their way to New Orleans, while train number four was a train on its way north to Chicago from New Orleans.

After a hearing before the railroad commission, on notice to the railroad company, the commission made an order granting the application as to trains one and three and denying it as to number four.

Before obeying the order the company brought this suit to enjoin its enforcement. Upon the filing of the bill a temporary injunction was issued, and a subsequent motion to dissolve it was denied. The defendant in the suit, the railroad commission, answered the bill, and denied that the railroad company furnished the town of Magnolia with adequate accommodations for the south, and put in issue the allegations of the bill that the order made by the commission was unreasonable or an illegal interference with the interstate commerce of the railroad company. The case came on for hearing before the Circuit Court, at the end of which a decree was made denying the relief asked for by the complainant, the court holding that the order of the commission was not unreasonable, and that, therefore, the temporary injunction should be and it was dissolved. An appeal to the Circuit Court of Appeals was prayed for by the railroad company and granted.

The bill stated, amongst other things, that the corporation was created under the laws of the State of Illinois, and that the complainant was a resident of that State, and domiciled in the city of Chicago; and that the railroad commission was created by the State of Mississippi, and its individual members were citizens and residents of that State. The complainant further showed that it was operating an interstate line of railroad, extending from the city of New Orleans, in Louisiana,

north through that State and the States of Mississippi, Kentucky, Indiana and Illinois to the Great Lakes of the Northwest, connecting at various points with other lines of interstate railroads. It is also averred that the Congress of the United States had established the line of railroad operated by the complainant as a national highway, for the accommodation of interstate commerce and the carriage of the mails of the United States, and had been so recognized and promoted as such by various acts of Congress; that owing to the exigencies of its interstate business and the requirements of modern commerce and passenger transportation, as well as the transportation of freight and the United States mails, the complainant had been, from time to time, required to shorten its schedule and to maintain and operate certain fast through trains, intended primarily and chiefly for interstate transportation and interstate commerce; that the two trains, numbered one and three—one being known as the fast mail and the other as the New Orleans and Chicago Limited—were run expressly for the purpose of carrying the interstate business and for the transportation of the United States mail, and that they were run on special schedules for that purpose, and of necessity had to make close connections with other through trunk lines of railroad doing an interstate business, and in order to maintain the necessary schedule of time for the operation of these interstate trains it was impossible and wholly impracticable to stop at all stations; and, further, that these trains, being south bound trains, only stop regularly at junction points and all such points of importance in the State of Mississippi which are necessary and which justify such stops. The bill showed the accommodations which were afforded the town of Magnolia by the other trains provided by the company, and which it alleged sufficiently accommodated the traveling public at that point; that a compliance with the order of the commission, by stopping the trains named, would imperil the ability of the complainant to comply with its contract with the United States for the carriage of the mails, and

would embarrass its interstate traffic, and that it would be impossible, under the present condition of the roadbed and equipment of the complainant, to increase the speed of the trains so as to allow for the stoppage of the trains as directed by the commission; that the complainant protested before the commission against the issuing of the order, and it alleged that it showed that it was then furnishing the town of Magnolia all reasonable and necessary railroad facilities, and that the effect of the order would be to give that town greater railroad facilities than were afforded by complainant to any other town in the State of Mississippi, including the city of Jackson, the capital of the State, excepting only the town of McComb City, which, being a relay station on complainant's road, it is necessary for all trains to stop there to change the engine, and for fuel, water, etc.; that the effect of the order also would be to give to the town five daily trains to the city of New Orleans, running within short intervals of each other. It was further alleged that by the statutory law of the State of Mississippi the complainant was subject to a penalty of fifty dollars for each time it failed to stop its trains on the order of the commission, and that the complainant would, therefore, be compelled to comply with the order or be subject to a multiplicity of suits for penalties arising from each and every violation of the order, and that defendants threaten by suit to enforce the order. It was then averred that the order of the commission was a direct burden upon interstate commerce, and also a direct and unnecessary interference with the speedy carriage of the mails of the United States.

An amendment to the bill was subsequently filed, showing that Congress had granted a right of way and sections of land in the State of Illinois to aid in the construction of a railroad from the southern termination of the Illinois and Michigan Canal, to a point at or near the junction of the Mississippi and Ohio Rivers, with branches, etc., which should remain a public highway for the use of the Government of the United States, free from toll or other charges upon the transportation of any

property or troops of the United States, and on which mails of the United States should at all times be transported, and the Congress had made like grants to the States of Alabama and Mississippi, respectively, for the purpose of aiding in the construction of a railroad from the city of Mobile to a point near the mouth of the Ohio River; and it was also averred that the State of Illinois had chartered the complainant in 1850, and ceded to it rights and lands granted to that State by the act of Congress.

The defendant commission answered and denied the averments in the bill, as already stated.

*Mr. Marcellus Green*, with whom *Mr. William Williams*, Attorney General of the State of Mississippi, *Mr. Garner Wynn Green* and *Mr. J. N. Flowers* were on the brief, for plaintiffs in error.

*Mr. Edward Mayes*, with whom *Mr. J. M. Dickinson* was on the brief, for defendants in error.

MR. JUSTICE PECKHAM, after making the foregoing statement, delivered the opinion of the court.

The decision in this case by the Circuit Court of Appeals is reported in 138 Fed. Rep. 327, in which will be found a statement of the material portions of the evidence taken at the hearing before the trial court. It is unnecessary to repeat it.

The first objection raised by the appellant is, that this suit is, in substance, one against a State. The commission was created by the State of Mississippi, under the authority of its constitution and laws, for the purpose of supervising, and to some extent controlling, the acts of the railroads operating within the State. Such a commission is subject to a suit by a citizen. *Reagan* v. *Trust Co.*, 154 U. S. 362; *Smyth* v. *Ames*, 169 U. S. 466; *Prout* v. *Starr*, 188 U. S. 537. We do not see that *Arbuckle* v. *Blackburn*, 191 U. S. 405, is at all in point.

It is also objected that an injunction will not lie from a United States court to stay proceedings in a state court, because of the provisions of section 720, United States Revised Statutes. 1 Comp. Stat. 581. The commission is, however, not a court, and is a mere administrative agency of the State, as held by the Mississippi court. *Telegraph Co.* v. *Railroad Commission*, 74 Mississippi, 80.

It is urged, however, that proceedings in a state court were commenced by the presentation of the petition of the citizens of Magnolia to the railroad commission, and because the commission, having made an order to stop the trains, would have to resort to the proper state court to aid it in the enforcement of its order, therefore the whole proceeding must be regarded as in a state court from the commencement. Whatever may be the provision of the state statute in regard to the enforcement solely by the state court of the order of the railroad commission, the proceeding while before the commission never thereby became a proceeding in a state court, and the jurisdiction of the Federal court to enjoin the commission from the enforcement of its order, because such order was a violation of the Federal Constitution, was not in the least affected.

The appellants also object that the Circuit Court of Appeals had no jurisdiction to review the judgment of the Circuit Court in this case, because, as is stated, the jurisdiction was predicated upon diversity of citizenship, and also upon the claim that the state statutes, requiring the stoppage of trains, when applied to the trains under discussion, violated the commerce clause of the Federal Constitution, and, therefore, the case should have come directly here from the Circuit Court, and *Field* v. *Barber Asphalt Co.*, 194 U. S. 618, is cited as authority. The complainant in this case, by a proper pleading, set up not only the diversity of citizenship, but also a constitutional question, and the complainant had the right to appeal from the judgment of the Circuit Court to the Circuit Court of Appeals, and from its decision in such a case an appeal or writ of error may be taken to this court. *American Sugar*

*Refining Co.* v. *New Orleans,* 181 U. S. 277, 281; *Huguley Manufacturing Co.* v. *Galeton Cotton Mills,* 184 U. S. 290, 295. The case of *Field* v. *Asphalt Co.,* supra, does not hold otherwise. It simply holds that where the jurisdiction of the Circuit Court attaches on the ground of diverse citizenship, and also upon a separate and independent constitutional ground, the party may take a direct appeal to this court, but it does not hold that the defeated party must do so and that he cannot go to the Circuit Court of Appeals.

The main question is, as stated in the court below, whether the order of the commission is valid with reference to the Federal Constitution. That depends upon the question whether it is only an incidental interference with interstate commerce, based upon a legal exercise of the police powers of the State for the purpose of securing proper and sufficient accommodation from the railroad company of railroad facilities for the residents of the State. The authority of the commission to interfere with a railroad is based on the statutes of Mississippi. Section 3550 (Chapter 112, Code of Mississippi, 1892, relating to railroads) reads as follows:

"3550. *To stop all passenger trains, if, etc., at county seats.*— Every railroad shall cause each and all of its passenger trains to stop for passengers at all county seats at which it has a depot, at the discretion of the railroad commission."

Chapter 134 of the same code relates to the supervision of common carriers. Section 4302 thereof reads as follows:

"*Necessary depots to be maintained.*—Every railroad shall establish and maintain such depots as shall be reasonably necessary for the public convenience, and shall stop such of the passenger and freight trains at any depot as the business and public convenience shall require; and the commission may cause all passenger trains to permit passengers to get on and off in a city at any place other than at the depot, where it is for the convenience of the travelling public. And it shall be unlawful for any railroad to abolish or disuse any depot when once established or to fail to keep up the same and to regularly

stop the trains thereat, without the consent of the commission."

Under these statutes the commission has power (a) to stop, in its discretion, all passenger trains at all county seats at which the company has a depot; (b) to stop such of the passenger and freight trains at any depot as the business and public convenience may require. The order in question was made with regard to a place which is both a county seat and also one where the railroad has a depot. It is not plain under which section the commission acted. Its order simply states that the petition of the citizens of Magnolia is granted as to trains one and three and denied as to train four. The petition throws no light upon the subject. We may assume, however, that the commission acted under all the authority it had from the above quoted sections of the statute. It is fair to assume that it had exercised its discretion in causing the trains to stop at a county seat, and that it did so because in its judgment it was reasonable and necessary for the public convenience. The question is whether, having regard to the facts, the order is valid.

The matter of the validity of statutes, directing railroad companies to stop certain of their trains at stations named, has been before this court several times, and the result of its holdings is: That a statute of Illinois, which required the Illinois Central Railroad to stop its fast mail train from Chicago to New Orleans at Cairo, in the State of Illinois, which was a county seat, was unconstitutional if the company had made adequate accommodation by other trains for interstate passengers to and from Cairo. That a statute which required every railroad corporation to stop all regular passenger trains running wholly within the State at its stations at all county seats was a reasonable exercise of the police power of the State, where the statute did not apply to railroad trains entering the State from any other State, or transcontinental trains of any railroad. A statute relating to railroad companies which provided that a company should cause three of its trains each

way, if so many were run daily, Sundays excepted, to stop at a station containing over 3,000 inhabitants, was valid in the absence of legislation by Congress on the subject; and also a state statute which required all regular passenger trains to stop at county seats was invalid, when applied to an interstate train, intended only for through passengers from St. Louis to New York, when it appeared that the railroad company furnished sufficient trains to accommodate all the local through business in the State, and where such trains stopped at county seats. These principles have been decided in *Illinois Central R. R. Co.* v. *Illinois,* 163 U. S. 142; *Gladson* v. *Minnesota,* 166 U. S. 427; *Lake Shore &c. Ry. Co.* v. *Ohio,* 173 U. S. 285; *Cleveland &c. Ry. Co.* v. *Illinois,* 177 U. S. 514. Upon the principles decided in these cases, a state railroad commission has the right, under a state statute, so far as railroads are concerned, to compel a company to stop its trains under the circumstances already referred to, and it may order the stoppage of such trains if the company does not otherwise furnish proper and adequate accommodation to a particular locality, and in such cases the order may embrace a through interstate train actually running and compel it to stop at a locality named. In such case, in the absence of congressional legislation covering the subject, there is no illegal or improper interference with the interstate commerce right; but if the company has furnished all such proper and reasonable accommodation to the locality as fairly may be demanded, taking into consideration the fact, if it be one, that the locality is a county seat, and the amount and character of the business done, then any interference with the company (either directly by statute, or by a railroad commission acting under authority of a statute) by causing its interstate trains to stop at a particular locality in the State, is an improper and illegal interference with the rights of the railroad company, and a violation of the commerce clause of the Constitution.

In reviewing statutes of this nature, and also orders made by a state railroad commission, it frequently becomes necessary

to examine the facts upon which they rest and to determine from such examination whether there has been an unconstitutional exercise of power and an illegal interference by the State or its commission with the interstate commerce of the railroad.   Whether there has or has not been such an interference is a question of law arising from the facts.   In this case there was no important conflict of evidence on the material points, and so the Circuit Court of Appeals has stated, and these facts are clearly and sufficiently set forth in 138 Fed. Rep., *supra.*   The fact that the company has contracts to transport the mails of the United States within a time which requires great speed for the trains carrying them, while not conclusive, may still be considered upon the general question of the propriety of stopping such trains at certain stations within the boundaries of a State.   The railroad has been recognized by Congress, and is the recipient of large land grants, and the carrying of the mails is a most important function of such a road.   We think that the railroad company has fully performed its duty towards the town in the way of furnishing it proper and adequate and reasonable accommodation, without stopping these interstate trains as ordered, and, therefore, the order of the commission was improper and illegal, and not merely an incidental interference with the interstate commerce of the company.   The Circuit Court of Appeals has, in effect, so held, although it did say that the commission and the Circuit Court had made an order that indicated that the trains which already stopped at Magnolia were not sufficient and that the town should have five daily trains going south, and, therefore, the court said it thought it well to examine other questions, which it did.   A reading of the whole opinion of the Circuit Court of Appeals shows that the court did not concede, in any degree, that the passenger facilities afforded were inadequate, but that the remedy was to compel the company to run more trains and not stop the ones in question. The opinion simply suggests that even if the facilities were inadequate, the appropriate course was to order more trains

instead of stopping those mentioned. In any event, the question is before us upon uncontradicted evidence as to whether there were or were not proper facilities, and we hold there were.

The order cannot be viewed alone in the light of ordering a stop at one place only, which might require not more than three minutes, as asserted. It is the question whether these trains can be stopped at all at any particular station when proper and adequate facilities are otherwise afforded such station. If the commission can order such a train to be stopped at a particular locality under such circumstances, then it could do so as to other localities, and in that way the usefulness of a through train would be ruined and the train turned from a through to a local one in Mississippi. The legislature of a State could not itself make such an order, and it cannot delegate the power to a commission to do so, in its discretion, when adequate facilities are otherwise furnished.

The transportation of passengers on interstate trains as rapidly as can with safety be done is the inexorable demand of the public who use such trains. Competition between great trunk lines is fierce and at times bitter. Each line must do its best even to obtain its fair share of the transportation between States, both of passengers and freight. A wholly unnecessary, even though a small, obstacle ought not, in fairness, to be placed in the way of an interstate road, which may thus be unable to meet the competition of its rivals. We by no means intend to impair the strength of the previous decisions of this court on the subject, nor to assume that the interstate transportation, either of passengers or freight, is to be regarded as overshadowing the rights of the residents of the State through which the railroad passes to adequate railroad facilities. Both claims are to be considered, and after the wants of the residents within a State or locality through which the road passes have been adequately supplied, regard being had to all the facts bearing upon the subject, they ought not to be permitted to demand more, at the cost of the ability of

the road to successfully compete with its rivals in the transportation of interstate passengers and freight.

We are of opinion that the judgment of the Circuit of Appeals was right, and it is

*Affirmed.*