425 F.2d 954
 Isidore ENGELMAN, Plaintiff-Appellee,
v.
William CAHN, as District Attorney of the County of Nassau, State of New York, Thomas DePaola, "John" Baldwin, "John Doe" and "Richard Roe," Individually and as police officers of the Nassau County Police, the names "John," "John Doe" and "Richard Roe" are fictitious and unknown to plaintiff and are intended to be and are hereby designated as other officers of the Nassau County Police who have knowledge or are depositories of telephone wiretapped or bugged conversations hereinafter in this complaint described, Defendants-Appellants.
 No. 217.
 Docket 33806.
 United States Court of Appeals Second Circuit.
 Argued November 7, 1969.
 Decided December 15, 1969.
 Certiorari Denied March 30, 1970.
 
 See 90 S.Ct. 1238.
 Abraham Engelman, New York City, for plaintiff-appellee.
 George D. Levine, Asst. Dist. Atty., Nassau County, Mineola, N. Y. (William Cahn, Dist. Atty. of Nassau County, Morris H. Schneider, County Atty. of Nassau County and Saul Roth, Deputy County Atty. of Nassau County, of counsel), for defendants-appellants.
 Before FRIENDLY, SMITH and HAYS, Circuit Judges.
 FRIENDLY, Circuit Judge:
 
 
 1
 This action, in which federal jurisdiction was asserted under the jurisdictional implementation, 28 U.S.C. § 1343(3), of the Civil Rights Act, 42 U.S.C. § 1983, was brought in the District Court for the Eastern District of New York in February 1968. The complaint alleged that on January 26, 1968, Detective DePaola, one of the defendants here, filed a two count information and complaint in the District Court of Nassau County, New York, charging Engelman and another with conspiring to violate and with substantively violating former § 986 of the New York Penal Law, McKinney's Consol.Laws, c. 40, relating to bookmaking. The state court complaint averred that the source of the detective's knowledge and the basis of his belief were "telephone conversations of the defendants monitored by the complainant pursuant to wire tap order of the County Court, Hon. Albert Oppido, dated April 17, 1967, wherein the complaint heard the defendants commit the aforesaid acts." Alleging that such wire-tapping violated his rights under the Fourth and Fourteenth Amendments, Engelman sought declaratory and injunctive relief with respect to the use of the wiretapped conversations in the pending criminal prosecution or before any other court as well as an order directing all tapes or transcripts of the conversations to be surrendered to him or destroyed.
 
 
 2
 A flurry of papers followed. Plaintiff moved for a temporary injunction; he said something about convening a three-judge court to enjoin the enforcement of § 813-a as unconstitutional but apparently the motion was not pressed. The defendants cross-moved to dismiss the complaint. After several adjournments both motions were argued before Judge Weinstein on June 26, 1968. By that time the Supreme Court had decided Lee v. Florida, 392 U.S. 378, 88 S.Ct. 2096, 20 L.Ed.2d 1166 (1968), overruling Schwartz v. Texas, 344 U.S. 199, 73 S.Ct. 232, 97 L.Ed. 231 (1952), and holding that wiretap evidence obtained and divulged in violation of former § 605 of the Federal Communications Act, 47 U.S.C. § 605 (1964 ed.), is inadmissible in state criminal prosecutions. Since then the plaintiff, who had earlier disavowed any reliance on § 605, appears to have considered it to be the heart of his case, while the defendants, who had earlier spent considerable time arguing the inapplicability of the section, have emphasized that it was not mentioned in the complaint and that the complaint has never been amended to refer to it.[1] Something seems to have been said about Engelman's holding some kind of license from the State Liquor Authority and the effect thereon of the wiretap evidence of gambling, see N.Y. Alcoholic Beverage Control Law, McKinney's Consol.Laws, c. 3-B, § 118, and everyone appears to have considered this as part of the case although no one bothered to amend the complaint to state it. Noting an indication by the District Attorney "that he has no intention to use the wiretap evidence" in the criminal prosecution and a representation that the evidence would not be furnished to the Liquor Authority pending the decision in Kaiser v. New York, cert. granted, 390 U.S. 1023, 88 S.Ct. 1436, 20 L.Ed.2d 281 (1968), which the judge thought would probably determine the retroactive effect of Lee, the court denied both motions without prejudice to their renewal.
 
 
 3
 The Supreme Court found occasion to speak to the retroactivity of Lee even before it decided Kaiser. Addressing itself to a pre-Lee trial, it said in Fuller v. Alaska, 393 U.S. 80, 89 S.Ct. 61, 21 L.Ed.2d 212 (1968), that "the exclusionary rule is to be applied only to trials in which the evidence is sought to be introduced after the date of our decision in Lee." On March 24, 1969, in Desist v. United States, 394 U.S. 244, 89 S.Ct. 1048, 22 L.Ed.2d 248 the Court announced that Katz v. United States, 389 U.S. 347, 88 S.Ct. 507, 19 L.Ed.2d 576 (1969), which overruled the doctrine that only trespassory eavesdrops or intrusions into constitutionally protected areas could rise to the level of unconstitutional searches and seizures, would be given "wholly prospective application," 394 U.S. at 246, 89 S.Ct. 1048, to wit, "only to cases in which the prosecution seeks to introduce the fruits of electronic surveillance conducted after December 18, 1967." 394 U.S. at 254, 89 S.Ct. at 1036. The same day the Court decided Kaiser v. New York, 394 U.S. 280, 89 S. Ct. 1044, 22 L.Ed.2d 274 (1969), and held that neither Lee nor Katz required overturning a conviction resting on wiretap evidence obtained pursuant to an order under § 813-a where the wiretap was nontrespassory (as apparently was the case here) and occurred prior to the date of Katz and the wiretap evidence was introduced prior to the date of Lee.
 
 
 4
 Meanwhile Engelman had renewed a motion to suppress in the state court, which had previously been denied. Although the new motion was made before Fuller, Kaiser and Desist, argument was postponed until after these cases were decided, and the court then reserved decision.[2] A fortnight later plaintiff renewed his motion for a temporary injunction in the federal suit, contending among other things that the danger of prejudice before the Liquor Authority required the injunction regardless of what the state criminal court might decide on the motion to suppress on the bookmaking charge. After the defendants had obtained a three week adjournment, the motion came on before Judge Travia on May 28, 1969. The docket entry recites "No opposition — Motion granted. Submit order on notice." On June 11 the court entered an order enjoining defendants pendente lite from offering any wiretapped conversations monitored or recorded pursuant to the order under § 813-a "as evidence or proof, or for any other purpose in any action or proceeding before any court, person, or any administrative agency, or in any manner whatever."
 
 
 5
 Defendants promptly appealed to this court. On August 6, 1969, they obtained an order granting a preference and dispensing with briefs on appeal but directing that an appendix be filed within 20 days. Their sense of urgency then declined. The appendix was not filed until September 29, and the appeal was not brought on for argument until November 7. Meanwhile — and since — we have been subject to a deluge of affidavits and memoranda from the district attorney. The experience demonstrates the undesirability of granting dispensation from the simple provisions of the Federal Rules of Appellate Procedure save on the strongest showing of need.
 
 
 6
 The first question encountered is whether the injunction was in fact granted in the absence of opposition. Being unable to resolve this on the record, we requested the parties to furnish affidavits as to what occurred in the district court on May 28. While no one appeared there for the District Attorney, a Deputy County Attorney who was in court on another matter made known that the deputy in charge was engaged elsewhere. According to his affidavit, he requested an adjournment but was told by the judge there was no point in this in view of the Lee, Fuller and Kaiser decisions. The deputy says he stated he could not consent to the granting of the motion but had no papers to present. In light of this, and of the defendants' consistent history of opposing everything, we cannot think the motion was consented to except in the narrow sense that no one was on hand to speak against it that day. We therefore proceed to the merits.
 
 
 7
 The portion of the injunction relating to the use of evidence obtained by wiretapping in the state criminal proceeding would seem to fly in the face of Stefanelli v. Minard, 342 U.S. 117, 72 S. Ct. 118, 96 L.Ed. 138 (1951), which was followed in Pugach v. Dollinger, 365 U.S. 458, 81 S.Ct. 650, 5 L.Ed.2d 678 (1961), unless that decision is inapplicable when admission of the evidence would require reversal and unless such was the case here. The argument for such a view would be that Stefanelli and Pugach were designed simply to protect the doctrines of Wolf v. Colorado, 338 U.S. 25, 69 S.Ct. 1359, 93 L.Ed. 1782 (1948), and Schwartz v. Texas, 344 U.S. 199, 73 S. Ct. 232, 97 L.Ed. 231 (1952), from backdoor attacks, but that the situation differs now that Wolf and Schwartz have been overruled.
 
 
 8
 We do not read Stefanelli as thus limited. See Cleary v. Bolger, 371 U.S. 392, 83 S.Ct. 385, 9 L.Ed.2d 390 (1963). Indeed it was the very inability of the petitioners in that case to protect their interests in the ordinary course of defense at trial and subsequent appeal that gave their position such limited plausibility as it had. See 342 U.S. at 119-120, 72 S.Ct. 118. The holding was "that the federal courts should refuse to intervene in State criminal proceedings to suppress the use of evidence even when claimed to have been secured by unlawful search and seizure." 342 U.S. at 120, 72 S.Ct. at 120. Mr. Justice Frankfurter spoke eloquently of "perhaps the most sensitive source of friction between States and Nation, namely, the active intrusion of the federal courts in the administration of the criminal law for the prosecution of crimes solely within the power of the States." Id. He mentioned that "the special delicacy of the adjustment to be preserved between federal equitable power and State administration of its own law, has been an historic concern of congressional enactment," id., citing the anti-injunction statute, 28 U.S.C. § 2283. The Court also noted that to sanction any such intervention as was proposed "would invite a flanking movement against the system of State courts by resort to the federal forum * * *, which conscientious counsel might be bound to employ, to subvert the orderly, effective prosecution of local crime in local courts," 342 U.S. at 123-124, 72 S.Ct. at 122.
 
 
 9
 We are well aware of decisions, as far back as Prentis v. Atlantic Coast Line Co., 211 U.S. 210, 29 S.Ct. 67, 53 L.Ed. 150 (1908), and Bacon v. Rutland R. R., 232 U.S. 134, 34 S.Ct. 283, 58 L.Ed. 538 (1914), holding that although exhaustion of state administrative remedies is normally required, exhaustion of state judicial remedies is not. Even apart from the effect of 28 U.S.C. § 2283, statements of the latter sort still leave intact, as we noted in Potwora v. Dillon, 386 F.2d 74, 77 (2 Cir.1967), the historic rule, embodied in § 16 of the First Judiciary Act, 1 Stat. 82 (1789), and later in Rev.Stat. § 723 and 28 U.S.C. § 384 (1940 ed.), that suits in equity shall not be sustained in courts of the United States "in any case where a plain, adequate and complete remedy may be had at law." The Supreme Court has affirmed the general applicability of this principle when the remedy at law is a motion to suppress or an objection in a state criminal prosecution both in Cleary v. Bolger, supra, 371 U.S. at 400-401, 83 S.Ct. 385, and in Dombrowski v. Pfister, 380 U.S. 479, 484-485, 85 S.Ct. 1116, 14 L.Ed.2d 22 (1965). Indeed the Court there stated:
 
 
 10
 "It is difficult to think of a case in which an accused could properly bring a state prosecution to a halt while a federal court decides his claim that certain evidence is rendered inadmissible by the Fourteenth Amendment," 380 U.S. at 485, n. 3, 85 S.Ct. at 1120 (1965).
 
 
 11
 We see no reason to think this is such a case.
 
 
 12
 We find no sufficient basis for reaching a different conclusion concerning the propriety of the portion of the order which enjoined the defendants from communicating evidence obtained by the wiretaps to the State Liquor Authority. The New York Court of Appeals has recently held the exclusionary rules to be fully applicable in proceedings before that agency, Finn's Liquor Shop v. State Liquor Authority, 24 N. Y.2d 647, 301 N.Y.S.2d 584, 249 N.E.2d 440 (1969), and there is thus no ground for belief that any testimony resulting from wiretaps subsequent to December 18, 1967, or inadmissible as a consequence of a federal statute, will be there received. It is true that the anti-injunction statute, 28 U.S.C. § 2283, is inapplicable since it relates only to pending state court proceedings. But, as we have pointed out, although Stefanelli relied in part on 28 U.S.C. § 2283, it rested on larger principles of equity and federalism, which the Court has again recognized in the passages we have cited from Dombrowski. We also note that the injunction which the Supreme Court directed to be reversed in Cleary v. Bolger, supra, 371 U.S. at 395, 83 S.Ct. 385, included the use of evidence at an administrative proceeding before the Waterfront Commission.
 
 
 13
 Defendants have requested that we not merely reverse the temporary injunction but also direct dismissal of the complaint. Since our review has disclosed the lack of equity in the bill, that is the appropriate course.[3] See Metropolitan Water Co. v. Kaw Valley Drainage District, 223 U.S. 519, 523, 32 S.Ct. 246, 56 L.Ed. 533 (1912); Triumph Hosiery Mills, Inc. v. Triumph Int'l Corp., 308 F.2d 196, 200 (2 Cir.1962); Electronic Specialty Co. v. International Controls Corp., 409 F.2d 937, 952 (2 Cir.1969).
 
 
 14
 The temporary injunction is vacated and the cause remanded with instructions to dismiss the complaint. In view of appellants' disregard of the terms of the order with respect to their expedited appeal, we deny costs.
 
 
 
 Notes:
 
 
 [1]
 The papers below made no reference to the drastic changes in the federal wiretap law affected by the Omnibus Crime Control and Safe Streets Act, 82 Stat. 212, enacted on June 19, 1968. In light of the disposition we make of this case we express no views concerning their effect on antecedent wiretaps except to say that this is not free from doubt
 
 
 [2]
 Although the state judge ultimately denied the motion to suppress without prejudice to its renewal, this was because he thought the federal injunction subsequently entered had rendered the issue academic
 
 
 [3]
 That plaintiff sought declaratory as well as injunctive relief is no bar to this result. Zwickler v. Koota, 389 U.S. 241, 88 S.Ct. 391, 19 L.Ed.2d 444 (1967), where the Supreme Court distinguished between the two types of relief for purposes of the abstention doctrine, is not in point. This is not a case in which the federal court is asked to withhold relief in the hope that the state courts will narrowly construe a statute and thus render it impervious to constitutional attack. Rather, the denial of federal relief rests on the desire to avoid unnecessary friction between state and federal courts and piecemeal litigation of criminal cases. Declaratory judgments can be as dangerous as injunctions in that respect