**NATIONAL RAILROAD PASSENGER CORPORATION, Plaintiff,**

v.

**The PENNSYLVANIA PUBLIC UTILITY COMMISSION, et al., Defendants.**

**No. CIV. A. 01–302.**

United States District Court, E.D. Pennsylvania.

May 10, 2001.

Ronald P. Schiller, Elizabeth J. Feeney, Piper, Marbury, Rudnick & Wolfe, Philadelphia, PA, for plaintiff.

Susan D. Colwell, PA Public Utility Comm.-Asst., Harrisburg, PA, for The Pennsylvania Public Utility Commission, John M. Quain, Robert K. Bloom, Vice Chairman, Nora Mead Brownell, Commissioner, Aaron Wilson, Jr., Commissioner and Terrence J. Fitzpatrick, Commissioner.

Craig J. Staudenmaier, Nauman, Smith, Shissler & Hall, Harrisburg, PA, for Norfolk Southern Railway Company and CSX Transportation, Inc.

David P. Bruton, Kevin M. Chu, Drinker Biddle & Reath, LLP, Philadelphia, PA, for Southeastern Pennsylvania Transportation Authority and John K. Leary, Jr., General Manager.

## *MEMORANDUM*

NEWCOMER, Senior District Judge.

Presently before the Court are two Motions to Dismiss filed by two groups of defendants, and the plaintiff's responses to each in the above captioned case. The Court will resolve both Motions in today's decision.

## *I. BACKGROUND*

Plaintiff, the National Railroad Passenger Corporation ("Amtrak"), has filed this action pursuant to 28 U.S.C. § 2201 and § 2202 for declaratory and injunctive relief against defendants the Norfolk Southern Railway Company ("NS"), CSX Transportation Corporation ("CSX"), the Pennsylvania Public Utility Commission and its Commissioners ("PUC"), five individually named PUC Commissioners (the "Commissioners"), and the Southern Pennsylvania Transportation Authority ("SEPTA") and its General Manager. NS and CSX have jointly filed one of the Motions to Dismiss (the "NS–CSX Motion"), while the PUC and the individually named PUC Commissioners have jointly filed the second Motion to Dismiss (the "PUC Motion").

Amtrak is a corporation established by Congress in 1971 pursuant to the Rail Passenger Service Act, 49 U.S.C. § 24101 et seq., with its principal place of business

in Washington, D.C. Additionally, the United States owns more than 50 percent of Amtrak's stock.

NS and CSX are Virginia corporations that regularly conduct business in Pennsylvania. The PUC is an administrative body organized and existing under the laws of Pennsylvania, and its powers derive from the Pennsylvania Public Utility Code, 66 PA. CONS.STAT. §§ 101 et seq. SEPTA is a regional transportation authority organized and existing under the laws of Pennsylvania. Its powers derive from the Metropolitan Transportation Authorities Act, 74 PA. CONS.STAT. §§ 1701–1785.

Amtrak's Complaint brings six counts, each one seeking to enjoin the defendants from continuing with proceedings currently pending before the PUC. In those proceedings (the "underlying case"), SEPTA filed five applications[1] for the construction of five mini high-level platforms at five different commuter stations along a rail corridor owned by Amtrak and on which Amtrak's rail lines are located, the Northeast Corridor right of way.[2] SEPTA's applications seek the PUC to waive certain clearance restrictions that would otherwise bar the platforms SEPTA seeks to construct.

After SEPTA filed its application, NS and CSX filed answers with the PUC objecting to SEPTA's proposed construction of the platforms. In those answers, NS and CSX allegedly represented that they were entitled to move their freight trains along the Northeast Corridor, and on Amtrak's Harrisburg right of way.[3] They further claimed that SEPTA's proposed platforms would obstruct movement of NS and CSX freight rail traffic along the Northeast Corridor in violation of their right to move freight along that corridor.

Amtrak decided not to formally participate in the underlying case, but instead sent a letter on April 12, 2000 to the PUC arguing that the PUC did not have jurisdiction over Amtrak in the underlying case. In that letter, Amtrak claimed that the PUC lacked jurisdiction to determine the scope of NS and CSX's right to move freight along the Northeast Corridor. Specifically, Amtrak contended that § 4.3 of a Freight Operating Agreement between Amtrak and NS and CSX mandates that any claim or controversy between Amtrak and NS and/or CSX must be pursued as an arbitration proceeding before the National Arbitration Panel.[4]

The April 12 letter further argued that the PUC has no jurisdiction over interstate

---

1. SEPTA filed one application on August 5, 1998 for the Baldwin Station. On August 30, 1999, SEPTA filed four other applications for the Chester, Overbrook, Strafford and Radnor stations.

2. The Northeast Corridor consists of tracks which run between Washington, D.C., and Boston, Massachusetts. All of the relevant stations and rights of way in this case were conveyed to Amtrak from the Consolidated Rail Corporation ("Conrail") pursuant to the Regional Rail Reorganization Act of 1973 (the "Rail Act"), 45 U.S.C. § 701 et seq.

3. The Harrisburg right of way runs between Philadelphia, Pennsylvania, and Harrisburg, Pennsylvania.

4. Section 4.3 of the Freight Operating Agreement, entitled "Arbitration Procedures", provides that:

Except as otherwise provided in this Agreement, any claim or controversy between Amtrak and Conrail concerning the interpretation, application or implementation of this Agreement shall be submitted to binding arbitration in accordance with the Arbitration Agreement dated April 16, 1971 among Amtrak and certain other railroads. Amtrak contends, and NS and CSX do not dispute at this time, that NS and CSX are successors in interest to Conrail, and are thus bound by the terms of the Freight Operating Agreement.

commerce, and explained that Amtrak acquired the Northeast Corridor pursuant to the Rail Passenger Service Act, 49 U.S.C. § 24101. However, Amtrak has not taken issue with SEPTA's request to construct the platforms.

■ Sometime before Amtrak wrote that letter, SEPTA's applications were assigned to Administrative Law Judge Allison K. Turner for hearing. Judge Turner conducted hearings on April 13, 2000, and May 1, 2000. In a June 14, 2000 Recommended Order and Opinion, Judge Turner proposed granting SEPTA permission to build the platforms, provided the parties construct gauntlet tracks at the relevant rail stations.[5] Amtrak alleges that Judge Turner based her recommendation, in part, upon her acceptance of NS and CSX's position that they possess freight operating rights along the Northeast Corridor. Because Amtrak alleges that NS and CSX do not have such rights, Amtrak's Complaint contends that Judge Turner's recommendation was improper.

On August 1, 2000, SEPTA, NS and CSX filed exceptions to Judge Turner's recommendation, and SEPTA filed a Petition to Reopen the Proceeding to present additional evidence. Then, on October 25, 2000, upon a review of Judge Turner's recommendation, and the August 1, 2000 submissions of SEPTA, NS and CSX, the PUC adopted SEPTA's Petition to Reopen, ordered that Amtrak be joined as an "indispensable party", and remanded the case to Judge Turner. On November 13, 2000, NS filed a Petition for Reconsideration of the PUC's October 25, 2000 Order, but the PUC denied that Petition on December 22, 2000.[6] At this time, the underlying case is once again before Judge Turner.

As explained above, Amtrak's Complaint brings six counts, each one seeking to enjoin the defendants from proceeding with the underlying case. Specifically, Amtrak's first and second counts allege that the arbitration clause of the Freight Operating Agreement governs NS and CSX's assertion of their freight operating rights along the Northeast Corridor. Thus, they contend that the PUC's consideration of that issue violates the arbitration provision of the Freight Operation Agreement between Amtrak and NS and CSX. Accordingly, Amtrak's first and second Counts are brought pursuant to the Federal Arbitration Act, 9 U.S.C. §§ 1 et seq. (the "FAA"), and seek declaratory and injunctive relief respectively.

Amtrak's third and fourth counts allege that if the PUC implements Judge Turner's recommendation requiring the installation of gauntlet tracks, that decision would constitute a "State or other law related to [Amtrak's] rates, routes, or service" in violation of the Rail Passenger Service Act, and would violate the Supremacy Clause of the Constitution. Accordingly, those counts also seek declaratory and injunctive relief respectively.

Amtrak's fifth count alleges that if the PUC requires the parties to install gauntlet tracks, that requirement would amount to an unconstitutional taking of Amtrak's property in violation of the Fifth and Fourteenth Amendments to the Constitution. Thus, the fifth count seeks injunctive relief.

---

5. Gauntlet tracks run parallel to the main set of train tracks and shift a train away from a platform as the train approaches a station.

6. In a December 29, 2000 Prehearing Order, Judge Turner scheduled a prehearing conference for January 23, 2001 where the parties were ordered to state their positions with respect to the issues on remand.

Finally, Amtrak's sixth count generally alleges that Amtrak will suffer immediate and irreparable harm if gauntlet tracks are installed on the Northeast Corridor. Accordingly, the sixth count also seeks injunctive relief.

In light of this background, the Court now turns to defendants' respective Motions to Dismiss.

## II. *DISCUSSION*

■ Both the NS–CSX and the PUC Motions allege this Court lacks subject matter jurisdiction over this action and move to dismiss plaintiff's Complaint pursuant to Federal Rule of Civil Procedure 12(b)(1). A Rule 12(b)(1) motion may challenge jurisdiction based on the face of the complaint or its existence in fact. *See Mortensen v. First Fed. Savings and Loan Ass'n,* 549 F.2d 884, 891 (3rd Cir.1977). Here, the defendants challenge subject matter jurisdiction facially based upon plaintiff's Complaint. Thus, the court must accept as true all well-pleaded allegations in the Complaint and draw reasonable inferences in favor of the plaintiff. *See Mortensen,* 549 F.2d at 891.

The NS–CSX and the PUC Motions move the Court to dismiss plaintiff's Complaint on other grounds as well. The Court will address each contention in turn.

■ The NS–CSX Motion contends that this Court lacks subject matter jurisdiction under 28 U.S.C. § 1331 because the Declaratory Judgment Act ("DJA"), the FAA, the Supremacy Clause, the Commerce Clause and the Takings Clause of the Constitution do not provide an independent basis for jurisdiction in this case.[7] Similarly, the PUC contends this Court lacks jurisdiction under the DJA.[8] In response, Amtrak contends that this Court does have jurisdiction under those laws, but first argues that this Court has § 1331 jurisdiction under 28 U.S.C. § 1349.

Section 1349 provides:

The district courts shall not have jurisdiction of any civil action by or against any corporation upon the ground that it was incorporated by or under an Act of Congress, unless the United States is the owner of more than one-half of its capital stock.

28 U.S.C. § 1349.

The Third Circuit, and courts in this district have repeatedly held that Amtrak's status under 28 U.S.C. § 1349 provides an independent basis for federal question jurisdiction under 28 U.S.C. § 1331. *See, e.g., In re Paoli Railroad Yard PCB Litig.* 35 F.3d 717, 738 (3rd Cir.1994); *Boone v. National R.R. Passenger Corp.,* 1993 WL 93946, at *2 (Mar. 30, 1993); *Estate of Zimmerman v. Southeastern Pennsylva-*

---

7. 28 U.S.C. 1331 provides:
 The district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States.
 NS, CSX argue that Amtrak has used the DJA to wrongfully create jurisdiction here. They argue that the DJA does not provide an independent basis of jurisdiction and cite *Skelly Oil Co. v. Phillips Petroleum Co.,* 339 U.S. 667, 671–72, 70 S.Ct. 876, 94 L.Ed. 1194 (1950) in support of that contention. NS and CSX further claim that Amtrak's remaining counts are really nothing more than Amtrak's possible legal defenses in the underlying case.

To support that position, they argue that federal defenses may not be treated as part of the Complaint when determining whether a claim arises under federal law. *See Louisville & Nashville Railroad v. Mottley,* 211 U.S. 149, 154, 29 S.Ct. 42, 53 L.Ed. 126 (1908).

8. The PUC's Motion is unclear as to whether the PUC contends the Court lacks jurisdiction under the DJA, 28 U.S.C. 2201, or whether it contends that the Court should exercise its discretion and decline to exercise jurisdiction under that Act. The Court will address both points in its opinion.

*nia Transp. Authority*, 17 F.Supp.2d 372, 377 (Jun. 22, 1998). Indeed, "based upon the legislative history of Amtrak's enabling legislation, 45 U.S.C. § 541, a suit against Amtrak is a federal question irrespective of the underlying cause of action." *Boone*, 1993 WL 93946, at *2. Consequently, the Court concludes it has subject matter jurisdiction over Amtrak's Complaint, and will not address the defendants' remaining arguments that the Court lacks jurisdiction here.

Next, NS and CSX argue that Amtrak's assertion of jurisdiction under 28 U.S.C. § 1349 is barred by the Anti–Injunction Act, 28 U.S.C. § 2283, and the *Younger* abstention doctrine. The Anti–Injunction Act provides that "[a] court of the United States may not grant an injunction to stay proceedings in a State court except as expressly authorized by Act of Congress, or where necessary in aid of its jurisdiction, or to protect or effectuate its judgments."

■ Thus, the plain language of the Anti–Injunction Act indicates that it is only applicable to "proceedings in a State Court", and this case involves an administrative proceeding before the PUC. Indeed, defendants concede that the Supreme Court has historically interpreted the Anti–Injunction Act as inapplicable to state administrative proceedings. *See NS–CSX memorandum* at 19, (citing *Mississippi Railroad Commission v. Illinois Cent. R. Co.*, 203 U.S. 335, 341, 27 S.Ct. 90, 51 L.Ed. 209 (1906)). Moreover, although the Third Circuit has never addressed the issue, every other Circuit that has dealt

with it holds that the Anti–Injunction Act does not apply to state administrative proceedings. *See Entergy, Arkansas, Inc. v. Nebraska*, 210 F.3d 887, 900 (8th Cir.2000); *Antle, Inc. v. Barbosa*, 45 F.3d 1261, 1271 (9th Cir.1995); *SMA Life Assurance Co. v. Sanchez–Pica*, 960 F.2d 274, 276 (1st Cir. 1992); *Kerr–McGee Chemical Corp. v. City of West Chicago*, 914 F.2d 820, 824 (7th Cir.1990); *American Motors Sales Corp. v. Runke*, 708 F.2d 202, 204–05 (6th Cir.1983); *Engelman v. Cahn*, 425 F.2d 954, 958 (2nd Cir.1969).

In addition, the purpose underlying the statute is the prevention of unnecessary friction between state and federal courts, and to maintain the equal dignity of the state and federal courts. *See Entergy, Arkansas, Inc.*, 210 F.3d at 900. Should this Court enjoin the PUC from continuing its proceedings, this Court's order would have no effect on the dignity of state courts, nor could it cause any friction with them.

To the extent Amtrak seeks to enjoin defendants from continuing the PUC proceeding because that proceeding infringes upon Amtrak's right to arbitrate, that argument makes little sense to the Court. As Amtrak's Complaint makes clear, only Amtrak, NS and CSX are parties to the Freight Operating Agreement, but SEPTA and the PUC are not. Thus, this Court cannot ultimately compel arbitration of the case pending before the PUC, and it would therefore be improper for the Court to enjoin the PUC proceedings pursuant to the FAA.[9]

9. It is true that courts must enforce an arbitration agreement "notwithstanding the presence of other persons who are parties to the underlying dispute but not to the arbitration agreement." *Moses H. Cone Memorial Hosp. v. Mercury Const. Corp.*, 460 U.S. 1, 20, 103 S.Ct. 927, 74 L.Ed.2d 765 (1983). However, Amtrak does not merely ask this Court to

enforce the Freight Operating Agreement, it also asks this Court to enjoin the defendants from proceeding with the PUC proceeding. *See Amtrak Complaint*, at 18. Thus, because SEPTA is not a party to the Freight Operating Agreement, the Court cannot preclude SEPTA from going forward with its application before the PUC. *See Moses H. Cone*, 460 U.S. at

Nonetheless, given the plain language of the Anti–Injunction Act, this Court's determination that enjoining the PUC proceeding would not contravene the purpose of that Act, and the reasoning of courts that hold the Anti–Injunction Act does not preclude enjoining a state administrative proceeding, the Court concludes that the Anti–Injunction Act is irrelevant in this case.

As mentioned earlier, NS and CSX also argue that the Court should abstain from resolving Amtrak's Complaint under the abstention doctrine first announced in *Younger v. Harris*, 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971). Under the *Younger* abstention doctrine, due deference must be paid to state proceedings initiated to resolve controversies that raise significant state issues when federal court intervention is sought. *See Ford Motor Co. v. Insurance Com'r of Com. of Pa.*, 874 F.2d 926, 931 (3rd Cir.1989). The *Younger* doctrine is not absolute though, and courts should focus on whether the state proceeding provides an adequate forum for the resolution of the federal claims that have been asserted. *See id.* The Supreme Court has applied the *Younger* doctrine to "state administrative proceedings in which important state interests are vindicated, so long as in the course of those proceedings, the federal plaintiff would have a full and fair opportunity to litigate his constitutional claim." *Ohio Civil Rights Com'n v. Dayton Christian Schools, Inc.*, 477 U.S. 619, 627, 106 S.Ct. 2718, 91 L.Ed.2d 512 (1986).

 Accordingly, a federal court should not abstain under *Younger* unless three elements are present: (1) the ongoing state proceedings are "judicial" in

nature; (2) the proceedings implicate important state interests; and (3) the proceedings afford an adequate opportunity to raise the federal claims. *See Middlesex County Ethics Comm. v. Garden State Bar Ass'n*, 457 U.S. 423, 432, 102 S.Ct. 2515, 73 L.Ed.2d 116 (1982). Nevertheless, abstention is an extraordinary and narrow exception to the district court's duty to adjudicate a controversy properly before it. *See Moses H. Cone Memorial Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 14, 103 S.Ct. 927, 74 L.Ed.2d 765 (1983).

 Here, there is little doubt that the proceedings before the PUC are judicial in nature and involve important state interests i.e. public safety. Additionally, in the proceeding before the PUC, all of the parties are entitled to be represented by counsel, present evidence, object to evidence, present witnesses, and present legal arguments. *See* 52 Pa. Administrative Code § 5.243. Additionally, the PUC regularly adjudicates federal issues. *See, e.g., Pittsburgh Tele–Communications, Inc. v. Bell Telephone Company of Pennsylvania*, 1987 WL 258099, 91 P.U.R.4th 552 (Pa. P.U.C.1987) (applying 47 U.S.C. § 224, the Pole Attachment Act of 1978). Further, Amtrak has failed to argue that it is unable to raise its federal claims before the PUC. Thus, the Court concludes that the PUC proceedings provide Amtrak an adequate opportunity to present its federal claims, and the elements of the *Younger* doctrine are satisfied.

However, the Court's conclusion that this case formally satisfies the *Younger* elements does not end the Court's abstention inquiry, "for *Younger* abstention is not always appropriate even if its elements are

---

20, 103 S.Ct. 927 (explaining that federal law *requires* piecemeal resolution when necessary to give effect to an arbitration agreement, and concluding that plaintiff's claims against two

defendants, only one of which was bound by an arbitration agreement, should be resolved separately—one in arbitration, and the other (if at all) in state-court litigation).

present." *Olde Discount Corp. v. Tupman,* 1 F.3d 202, 212 (3rd Cir.1993). In *Olde Discount,* the plaintiff, Olde District Corporation, a securities broker-dealer, sought to enjoin the Delaware securities commissioner from seeking rescission on behalf of two investors who had entered into a predispute arbitration agreement with plaintiff. *See Olde Discount Corp.,* 1 F.3d at 205. After the district court declined to abstain under *Younger,* the Third Circuit upheld the lower court's opinion finding that it had a duty to enforce the parties' arbitration agreement pursuant to the FAA. *See id.* at 212–13. The Court declined to abstain after finding that Olde Discount had invoked the FAA during the Delaware administrative proceedings to no avail. *See id.* at 212. Accordingly, the Court found that "Delaware's insistence upon the rescission remedy presents just such an immediate potential for irreparable harm to Olde Discount's right under the FAA to an arbitral forum." *See id.* at 212.

Like the plaintiff in *Olde Discount,* in its April 12, 2000 letter, Amtrak also invoked its arbitration rights before the PUC. Furthermore, despite Amtrak's contention that its dispute with NS and CSX should proceed to arbitration, there is no evidence that the PUC has resolved that issue, and the PUC is continuing its proceedings. Thus, if Amtrak is forced to address its dispute with NS and CSX before the PUC, "it would suffer an immediate, irreparable harm to the federal right established by the FAA" and Younger abstention is therefore inappropriate here. *Olde Discount,* 1 F.3d at 213.

NS, CSX, and the PUC, in their Motions, further contend that this Court should decline to exercise jurisdiction under the DJA pursuant to *Brillhart v. Excess Ins. Co.,* 316 U.S. 491, 494, 62 S.Ct. 1173, 86 L.Ed. 1620 (1942).[10] The DJA permits the discretionary exercise of jurisdiction over suits otherwise falling under federal subject matter jurisdiction. *See United States v. Com. of Pa., Dept. of Environmental Resources,* 923 F.2d 1071, 1074 (3rd Cir.1991). However, the Declaratory Judgment Act "should have a liberal interpretation." *Exxon Corp. v. Federal Trade Commission,* 588 F.2d 895, 900 (3rd Cir.1978).

When deciding whether to exercise jurisdiction in light of a pending state court proceeding, "the central question is whether the controversy may 'better be settled' in the state court and this may entail consideration of whether the claims of all parties in interest can satisfactorily be adjudicated in the state court proceeding." *Dept. of Environmental Resources,* 923 F.2d at 1075 (construing *Brillhart* ). Accordingly, the Third Circuit has set forth four factors this Court should consider in deciding whether to exercise jurisdiction: (1) the likelihood that a federal court declaration will resolve the uncertainty of obligation which gave rise to the controversy; (2) the convenience of the parties; (3) the public interest in settlement of the uncertainty of obligation; and (4) the availability and relative convenience of other remedies.

In the action before the PUC, uncertainty surrounds the obligations of the parties. Contrary to the PUC's contention

10. The DJA provides:

In a case of actual controversy within its jurisdiction, ... any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought. Any such declaration shall have the force and effect of a final judgment or decree and shall be reviewable as such.

28 U.S.C. § 2201.

that there is no conflict between the PUC and Amtrak, Amtrak disputes whether the PUC has the authority to regulate Amtrak's operations. Similarly, Amtrak disputes whether the PUC can compel Amtrak's participation in the administrative proceedings in light of the arbitration agreement between Amtrak and NS and CSX. In the course of this case, the Court will resolve those issues. Upon a review of the remaining factors, the parties' arguments pertaining to each, and the 'defendants' failure to demonstrate that this case and the case pending before the PUC present the same issues, the Court will not decline to exercise jurisdiction here.[11] To the extent NS and CSX asserts that Amtrak has created a "fictitious controversy between it and NS an CSX", that argument remains unsupported and is inappropriate at this juncture.

■ The PUC next argues that Amtrak's Complaint against it is not yet ripe for adjudication. More specifically, the PUC contends that no case or controversy can exist here between Amtrak and the PUC until the PUC issues a final decision in the underlying case. In the context of declaratory judgments, the Third Circuit employs a three step analysis to determine whether a case is ripe for adjudication: 1) the parties' interests; 2) the probable conclusiveness of a judgment; and 3) the practical utility to the parties of rendering a judgment. *See NE Hub Partners, L.P.*

*v. CNG Transmission Corp.,* 239 F.3d 333, 342 (3rd Cir.2001).

■ The PUC and Amtrak are adverse. First, Amtrak contends that the PUC lacks jurisdiction to decide issues governed under the Freight Operating Agreement, lacks jurisdiction to require improvements over the Northeast Corridor, and lacks jurisdiction to compel Amtrak to participate in the underlying case. *See NE Hub Partners,* 239 F.3d at 343 (finding interests of state environmental hearing board adverse to those of permit applicant who claimed state process was preempted by federal law). Moreover, the PUC's focus upon the ultimate result of the underlying case does not take into account "that preemption may operate to spare a party from that very process." In fact, the process itself may give rise to adversity so that an action challenging the process is ripe even before the process concludes. *See id.* at 342.[12]

The next factor the Court considers, conclusiveness, is a short-hand term for whether a declaratory judgment definitively would decide the parties' rights. *See NE Hub Partners,* 239 F.3d at 344. It also addresses the extent to which further factual development of the case would facilitate decision, so as to avoid issuing advisory opinions, or whether the question presented is predominantly legal. *See id.* Here, a declaratory judgment would definitively decide whether: 1) the PUC may

---

11. In its Memorandum in support of its Motion, the PUC also argues that Amtrak has failed to exhaust its Administrative Remedies. However, the PUC seemingly combines this argument with its contention that this action and the PUC proceeding involve the same issues and claims, and is unclear and undeveloped. As the PUC acknowledges, dismissal of a federal declaratory action in favor of a parallel state proceeding is favored only if the state proceeding "present[s] the same issues, not governed by federal law, between the same parties." *See Brillhart,* 316 U.S. at 495,

62 S.Ct. 1173. This case does not involve the same issues, and does involve federal statutory and constitutional law.

12. The PUC does not raise the ripeness issue with respect to any other defendant and instead only argues that this case is not ripe until the PUC issues a final decision. Accordingly, the Court will limit its discussion to whether Amtrak's Complaint against the PUC is ripe.

take jurisdiction over NS and CSX operating rights claims; 2) the PUC's jurisdiction over Amtrak's routes and services is preempted; 3) whether NS and CSX and Amtrak are required to arbitrate their claims; and 4) whether the PUC may compel Amtrak to participate in the underlying case. Additionally, the issues Amtrak raises are predominantly legal, and further factual development is unlikely to be necessary.

The final factor, practical utility, concerns whether declaratory judgment will affect the parties plans of action, and whether withholding judgment would pose a hardship to the parties. *See NE Hub Partners*, 239 F.3d at 344. Should this Court enjoin the PUC from continuing its proceedings, that resolution would certainly be useful to Amtrak. Such a resolution would relieve Amtrak the burden of participating in a time consuming state process, and withholding judgment would subject Amtrak to the hardship of that process. *See NE Hub Partners*, 239 F.3d at 343, 345. Consequently, the Court concludes that Amtrak's Complaint against the PUC is ripe.

■ Finally, the PUC claims that it is immune from suit under the Eleventh Amendment to the United States Constitution.[13] Amtrak contends that collateral estoppel bars the PUC from litigating the Eleventh Amendment issue now. Collateral estoppel prevents the relitigation of issues that have been decided in a previous action. *See Hawksbill Sea Turtle v. Federal Emergency Management Agency*, 126 F.3d 461, 474 (3rd Cir.1997). It "protect[s] litigants from the burden of relitigating an identical issue with the same

party or his privy and ... promot[es] judicial economy by preventing needless litigation." *See id.* (citing *Parklane Hosiery Co. v. Shore*, 439 U.S. 322, 326, 99 S.Ct. 645, 58 L.Ed.2d 552 (1979)).

■ The issue of the PUC's Eleventh Amendment immunity has already been thoroughly litigated between Amtrak and the PUC in this Court. *See National Railroad Passenger Corp. v. Com. of Pennsylvania Public Utility Com'n*, 1997 WL 597963, at *6–10 (Sep. 15, 1997) (holding that the PUC is not an "arm of the state" and rejecting claim of immunity); *National Railroad Passenger Corp. v. Com. of Pennsylvania Public Utility Com'n*, 1998 WL 103377, at *2–3 (E.D.Pa. Feb.23, 1998) (holding that decision that PUC was not "arm of the state" was *res judicata* and denying PUC's Rule 60(b) motion for relief from judgment), *appeal dismissed*, 178 F.3d 1280 (3rd Cir. Mar. 24, 1999). Upon a review of the above cases, and the factors the Third Circuit requires courts to consider when determining whether collateral estoppel is appropriate,[14] the Court concludes that the PUC is collaterally estopped from raising the Eleventh Amendment issue again in this case.

Accordingly, and for the foregoing reasons, the Court will not dismiss plaintiff's Complaint.

---

**13.** The Eleventh Amendment provides:
 The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State.
 U.S. CONST. amend. XI.

**14.** *See Hawksbill Sea Turtle,* 126 F.3d at 474.